In re DENALCO
CORPORATION, Debtor.

FIRST NATIONAL BANK OF
GENEVA, Appellant,

v.

Trustee John BIALLAS and United
States of America, Appellees.

No. 85 C 8777.

United States District Court,
N.D. Illinois, E.D.

Feb. 3, 1986.

extent of the time, money and effort already expended by the parties on the issue of the objection.

Daniel M. Pelliccioni, Ellen Beverly, Brett A. Keeshin, Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for appellant.

Diane L. Donley, Dept. of Justice, Washington, D.C., for appellees.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

First National Bank of Geneva ("Bank") appeals [1] from two orders of Bankruptcy Judge Robert L. Eisen:

1. his July 8, 1985, 51 B.R. 77, order ("Order I") granting the United States' summary judgment motion and denying Bank's corresponding cross-motion; and

2. his August 16, 1985 order ("Order II") denying Bank's motion for rehearing.

For the reasons stated in this memorandum opinion and order, this action is dismissed for lack of subject matter jurisdiction.

### Facts

On November 24, 1981 the United States awarded a contract (R. 19, Ex. 1) to Denalco Corporation ("Denalco") to produce 4,300 gasoline cylinder heads for a total price of $2,524,518. One of the contract's standard provisions was captioned "Progress Payment for Small Business Concerns" and derived from Defense Acquisition Regulation ("DAR") 7–104.35(b) (R. 19, Ex. 3). Two aspects of that DAR affect this dispute:

1. DAR § (a)(1) allowed Denalco to receive up to 90% of its total cost incurred under the contract in advance of its delivery of the finished cylinder heads to the government.[2]

2. DAR § (d) specified title to all materials, inventories, special tooling and other items properly chargeable to the contract "shall forthwith vest in the Government upon said acquisition, production or allocation."

During the contract's life, the United States advanced $1,464,835 in progress payments to Denalco (R. 18, App. I). Nearly the entire amount ($1,400,731.78) remains unliquidated (*id.*).

In April 1982 Denalco began to explore the possibility of Bank financing to enable Denalco to buy a piece of equipment called a Mazak Micro Center (the "Mazak") from Siegler Manufacturing Corporation ("Siegler") (R. 19, Ex. 2). On May 18, 1982 Denalco agreed to purchase the Mazak for a total price of $143,629.53 (R. 18, App. I) and paid Siegler an $80,000 deposit (*id.*).

Bank later did agree to finance Denalco's purchase of the Mazak from Siegler. On July 1, 1982 Bank and Denalco entered into a security agreement (R. 18, App. I) granting Bank a security interest in the Mazak to secure repayment of a $64,000 loan. On July 8, 1982 Bank filed with the Illinois Secretary of State a financing statement (R. 18, App. I) covering the Mazak.

On April 25, 1983 Denalco filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. Denalco continued its business as a debtor in possession until the bankruptcy proceedings were converted to a Chapter 7 liquidation in September 1983. On December 2, 1983 the United States terminated its contract with Denalco.

On January 13, 1984 Bank filed an adversary proceeding in the bankruptcy court, asking for a declaratory judgment against the United States and Denalco's trustee.

---

1. This Court must look to 28 U.S.C. § 158(a) for its jurisdiction to decide this appeal. All further citations to the relevant provisions of Title 28 will simply take the form "Section—."

2. Two versions of DAR 7–104.35(b) appear in the record, one (R. 19, Ex. 3) stating the progress payments should equal 85% of a contractor's costs and the other (R. 4, Ex. 1 and R. 18, App. I) using a 90% figure. Because both Bank Mem. 3 and United States Mem. 3 seem to adopt a 90% figure as the appropriate measure, this Court will accept that version. In any event, nothing turns on the difference.

Bank sought to establish a perfected purchase money security interest in the Mazak superior to the government's claim of title under DAR § (d)'s title-vesting clause. Neither Denalco nor its trustee ever responded to the adversary proceeding. Though the parties have really not focused on this issue in their submissions, it is plain from their factual statements that in the face of Bank's and the United States' conflicting claims to the Mazak, Denalco's trustee disclaimed all interest in the Mazak.

All three parties then agreed to a sale of the Mazak, with the sale proceeds to be placed into an escrow account pending the bankruptcy court's decision as to whether Bank or the United States possessed a superior claim. Order I (R. 12 at n. 1) reflects Denalco's trustee asserted no claim to those proceeds—once again undoubtedly because the claims of Bank and the United States so far exceeded the value of the Mazak. After Judge Eisen issued Orders I and II in favor of the government, Denalco's trustee turned over those proceeds ($107,204.42) to the government (United States Mem. at 4 n. 2).

### Bank's Contentions

Bank advances three arguments to overturn Judge Eisen's decision:

1. No subject matter jurisdiction existed in the bankruptcy court to decide an adversary proceeding between Bank and the United States, so this Court's review must be de novo.

2. Bank perfected its security interest in the Mazak before the government acquired title to the Mazak.

3. Any extinction of Bank's security interest by the United States constitutes a "taking" requiring compensation under the Fifth Amendment.

Because Bank's first contention has even more force than Bank itself urges, this opinion need deal only with that subject.

### Subject Matter Jurisdiction in This Court [3]

Bank claims its dispute with the United States does not constitute a "core proceeding" under Section 157(b)(2) but is rather a Section 157(b)(3) "proceeding that is otherwise related to a case under title 11." As to such noncore proceedings, Section 157(c)(1) provides:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

Hence Bank argues this Court should review de novo the bankruptcy court's factual findings and legal conclusions.

Section 157(b)(2)(K) includes within "core proceedings" all "determinations of the validity, extent, or priority of liens." On the surface that might seem broad enough to encompass the current dispute between Bank and the government over the Mazak. But *In re Dr. C. Huff Co. (Allis-Chalmers Corp. v. Borg-Warner Acceptance Corp.)*, 44 B.R. 129, 134 (Bankr.W.D.Ky.1984) (emphasis in original) explains why things are not as they might seem in that respect:

But such a categorization overlooks the necessity that we deal with *property of the estate* in entertaining such questions. Section 157(b)(2)(K) must be read as em-

---

3. As our Court of Appeals has just said in *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir.1986):

The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged. Because federal judges are not subject to direct check by any other branch of government—because the only restraint on our exercise of power is self-restraint—we must make every reasonable effort to confine ourselves to the exercise of those powers that the Constitution and Congress have given us.

And of course the need for such an allegation is only one phase of the threshold inquiry whether federal jurisdiction *exists*.

powering us *only* to make "determinations of the validity, extent, or priority of liens upon property of the estate." Otherwise, we would be asserting a form of jurisdiction *ferae naturae,* capable of the rampant adjudication of property rights wherever found and by whomever owned.

Bank says this proceeding does not involve "property of the estate" because:

(1) Bank's and the United States' claims together exceed the amount of the proceeds generated by the sale of the Mazak.

(2) Denalco's trustee has disclaimed any interest in those proceeds.

According to the United States, this matter does concern "property of the estate" because it involves a dispute between the true owner of the property (assertedly the United States) and a secured creditor of the debtor. But the United States' claim of ownership is at odds with any status of the Mazak as "property of the estate." And if that claim of ownership is *not* credited, the mere fact that both the government and Bank have claims to property that may once have belonged to Denalco does not mean their present dispute inter se concerns "property of the estate." Because the size of the total indebtedness and the lien rights left no room for any debtor interest in the Mazak or its proceeds (a fact confirmed by the trustee's disclaimer), this controversy is not a "core proceeding" under Section 157(b)(2)(K).

Bank proceeds from that conclusion to the proposition that this dispute must be a noncore "related" case, entitling Bank to de novo review under Section 157(c)(1). But that position wholly overlooks a third category of legal controversies that have no business in the bankruptcy courts at all: noncore *unrelated* cases. *Dr. C. Huff,* 44 B.R. at 134–35 (footnotes omitted) tells why a dispute between two of a debtor's creditors over non-estate property falls within that category:

In the case at bar we are confronted with a priority dispute between two creditors of the debtor corporation. Their conflict involves no issues of bankruptcy law, only questions of state commercial law which apparently have not been addressed by any Kentucky court. Neither under the 1984 Act nor according to pre-[*Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50 [102 S.Ct. 2858, 73 L.Ed.2d 598] (1982) ] court decisions does this case come within our reach. It does not involve either property of the debtor or property of the estate. Any decisions by this court on the merits would have no effect whatsoever on any aspect of the debtor's bankruptcy proceeding. We are unable to find even [a] "peripheral relation" to the bankruptcy.... It is clear that controversies of this type fall within the classification of non-core, unrelated cases over which this court has no jurisdiction.

See also *In re Dickenson Lines, Inc.,* 47 B.R. 653, 655–56 (Bankr.D.Minn.1985); *In re D.L. McKinney (New Farmers National Bank of Glasgow v. McKinney* ), 45 B.R. 790, 791–92 (Bankr.W.D.Ky.1985) (also confirming jurisdiction is not conferred by "tenuous link" that sale proceeds are held, as here, by trustee).

That aptly describes this case. This Court is obligated to raise the jurisdictional issue sua sponte where it appears with certainty the parties should have known their dispute would have no impact on the administration of Denalco's bankruptcy. *Cf. Kanzelberger v. Kanzelberger,* 782 F.2d 774, 777–778 (7th Cir.1986) (Court of Appeals reversed and remanded case to state court *post-judgment,* where it was obvious diversity of citizenship was lacking because of location of corporation's principal place of business); *Ross v. Inter-Ocean Insurance Co.,* 693 F.2d 659 (7th Cir.1982) (same result, where it should have been obvious to the defendant that the amount in controversy could not exceed the minimum jurisdictional amount). This dispute does not involve the debtor or its trustee as a party, and its outcome cannot affect either the assets or the liabilities of the debtor's estate.

Indeed there is nothing to suggest the debtor's estate could *ever* have asserted any colorable interest in the Mazak or its sale proceeds:

1. Denalco originally purchased the Mazak from Siegler for $143,629.53 (R. 18, App. I).

2. Bank's claim ($64,000) and the government's claim ($1,400,731.78) together exceed the Mazak's original purchase price more than ten times.

It cannot reasonably be inferred that the sale of the Mazak could conceivably have yielded proceeds sufficient to satisfy the conflicting claims of both Bank and the United States and to enlarge the pool of assets available to satisfy Denalco's other creditors.

Because Denalco was in possession of the Mazak when the Chapter 11 proceeding was filed, the bankruptcy court may well have had jurisdiction when Bank initially brought this adversary proceeding. But when the case became a straight Chapter 7 liquidation proceeding, the debtor no longer had any need to *use* the Mazak. And when the trustee consequently failed to respond to Bank's adversary proceeding and voluntarily agreed to the sale of the Mazak (relinquishing any claim to the proceeds), clearly the debtor no longer had any interest in the property. *Cf. D.L. McKinney*, 45 B.R. at 791. Hence the bankruptcy court lacked jurisdiction to consider this dispute.

This Court's own jurisdiction to hear bankruptcy appeals derives from Section 158(a):

> The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.

Because the bankruptcy court lacked original jurisdiction under Section 157, this Court lacks jurisdiction to hear the appeal. Accordingly this action is dismissed for lack of subject matter jurisdiction.