In re Paul KUN, aka Pal Kun, Debtor.

James L. HODGE and Sue P. Hodge, aka Oma Suzanne Hodge, husband and wife, Appellants,

v.

Paul KUN, aka Pal Kun, Appellee.

No. 87–15050.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 1988.

Decided Feb. 27, 1989.

Philip L. Latish, Levy, Sherwood, Klein & Dudley, P.A., Phoenix, Ariz., for appellants.

Henry Jacobowitz, Kaplan, Jacobowitz, Byrnes, Rosier & Hendricks, P.A., Phoenix, Ariz., for appellee.

Before HUG, FLETCHER and BOOCHEVER, Circuit Judges.

FLETCHER, Circuit Judge:

This case involves a written contract executed by James Hodge ("Hodge") and Paul Kun ("Kun") in 1979. The bankruptcy court held that the contract is enforceable and awarded damages and attorney's fees. The Bankruptcy Appellate Panel (BAP) held that Hodge has no rights under the contract and reversed the judgment awarding damages and attorney's fees. We affirm in part, reverse in part, and remand.

I

In 1976, Hodge acted as a real estate salesman in the sale of four properties in Phoenix, Arizona to Kun: the Arizona Ambassador Hotel; the Camelback Village Apartments; the Eastern Arms/Western Arms Apartments; and the Tempe Bel Air Apartments.

During the sale of the Arizona Ambassador Hotel and the Camelback Village Properties, Hodge was employed as a real es-

tate salesman at Coldwell Banker in Phoenix. In March of 1976, Kun and Hodge incorporated AAA Realty. Hodge effectively resigned from Coldwell Banker on July 16, 1976, when he transferred his license to AAA. Hodge was associated with AAA Realty when he assisted Kun in the purchase of the Eastern Arms/Western Arms and Tempe Bel Air Apartments. Hodge has never claimed that he was acting as a broker during the purchase of any of the four properties. Hodge apparently managed all four properties for Kun until March of 1978.

According to Hodge, Kun and Hodge entered into a "Real Estate Agreement" on January 23, 1979. The agreement provided that:

> This agreement shall be between James L. Hodge, hereinafter referred to as "Broker" and Paul Kun, hereinafter referred to as "Principal" and shall pertain to real estate purchased by Principal as a result of the efforts and assistance of Broker.
>
> In lieu of real estate sales commissions earned by Broker at time of purchase and deferred by mutual agreement, Principal agrees to pay Broker the sum equal to three (3) percent of the selling price of the properties listed below, such payment to be made at close of escrow. Should properties be traded, exchanged, or in any other way be disposed of by Principal, the sum equal to three (3) percent of the appraisal value of the property shall be paid to Broker, such payment to be made at close of escrow.

The agreement then lists the four properties discussed above.

On August 29, 1980 Hodge filed the "REAL ESTATE AGREEMENT" with the Maricopa County Recorder. The document was recorded against the four properties.

Kun filed for bankruptcy on July 1, 1981. Hodge filed an adversary proceeding on October 15, 1982, against Kun as debtor for the allowance of Hodge's claim as an unsecured creditor, and later filed an Amended Proof of Claim seeking 3% of the selling price of the four properties.

Kun answered and counterclaimed. Kun's amended answer denied that Kun signed the Real Estate Agreement and his counterclaim against Hodge alleged breach of fiduciary duty, constructive fraud, actual fraud, and slander of title. Kun also sought to have the Real Estate Agreement rescinded, and declared void and unenforceable.

Following five years of litigation and a two week trial, the bankruptcy court found that Hodge and Kun freely and voluntarily entered into the 1979 contract; that Arizona's real estate statutes do not render the contract unenforceable; and that Kun's counterclaims and defenses constituted harassment and were groundless, and not made in good faith. The court also awarded $100,000 in attorneys' fees to Hodge.

The BAP affirmed the bankruptcy court's finding that Hodge and Kun freely and voluntarily entered into the 1979 agreement.[1] The BAP also held that the contract was unenforceable under Arizona's real estate statutes and reversed the award of attorneys' fees. We have jurisdiction pursuant to 28 U.S.C. § 158(d).

## II

The decision of the BAP is reviewed de novo. We evaluate the bankruptcy court's findings of fact under the clearly erroneous standard and review its conclusions of law de novo. *In Re Windmill Farms, Inc.*, 841 F.2d 1467, 1469 (9th Cir.1988). Because we confront issues not yet decided by the Arizona Supreme Court, we must determine the result that court would reach if it were deciding this case. *See Torres v. Goodyear Tire & Rubber*, 857 F.2d 1293, 1295 (9th Cir.1988).

## III

■ Hodge argues that the BAP erred in holding that Arizona Revised Statutes (ARS) § 32–2155 renders the 1979 contract unenforceable. Section 32–2155 states that a real estate salesman may receive commissions only from brokers: "[a] broker shall

1. Kun does not appeal this portion of the BAP's opinion.

employ and pay only legally licensed salesmen and a salesman shall accept employment and compensation as such only from legally licensed brokers." Hodge argues that a real estate salesman always is permitted to sue a principal for a commission under ARS § 32–2152, which states that "[a]n action for the collection of compensation may be maintained in the courts of the state by any broker or salesman." Hodge also argues that, even if § 32–2155 bars a salesman from receiving commissions from a principal in some cases, it does not render the 1979 contract unenforceable because Kun was an experienced real estate investor, Hodge had left AAA realty and Coldwell Banker by 1979, and Kun contracted to pay Hodge a percentage of the sales price of the four properties only because Hodge had helped to manage them.

A fundamental principle of statutory construction is that "[i]nterpretive constructions [of statutes] which would render some words surplusage ... are to be avoided." *Pacific Mutual Life Insurance Co. v. American Guaranty Life Insurance Co.*, 722 F.2d 1498, 1500 (9th Cir.1984). Under Hodge's reading of § 32–2152, a salesman can always sue the principal for a commission. We cannot accept this construction of § 32–2151, as it would render § 32–2155's express limitation on the sources of a salesman's compensation nugatory. *See Schoene v. Hickam*, 397 S.W. 2d 596, 603 (Mo.1965) (employing this reasoning in holding that ARS § 32–2152 does not authorize an Arizona real estate salesman to sue a principal for a commission).

Nor are we convinced by Hodge's arguments that § 32–2155 is inapplicable in cases where the party promising to pay the commission is an experienced real estate investor or the party promised the commission has left the employ of the broker involved in the sale. "[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Section 32–2155 flatly prohibits real estate salesmen from accepting commissions from anyone but brokers; it contains no exceptions. Moreover, " 'there seems little doubt that the legislative intent [of Arizona's real estate statutes] is to furnish protection to the public by strict ... requirements.' " *Schlicht v. Curtin*, 117 Ariz. 30, 570 P.2d 801, 803 (App.1977) (citation omitted).

We also reject Hodge's argument that the purpose of the 1979 contract was to compensate Hodge for his services as a property manager, rather than for his services as a real estate salesman. Hodge's own pleadings in the bankruptcy court expressly state that the 1979 contract was merely a memorialization of Kun's oral promise to pay Hodge commissions on the four properties when they were sold. In the pretrial order, which contained a statement of the contested issues of fact in the case as agreed upon by the parties, Hodge contended that

> Defendant orally agreed to pay Plaintiff for his efforts in connection with the acquisition by Defendant of the properties identified in the Real Estate Agreement upon the sale of those properties. This oral agreement subsequently was reduced to writing in the Real Estate Agreement dated January 22, 1979, which was signed by the Plaintiff and Defendant before a Notary Public employed by Transamerica Title Insurance Company.

The wording of the 1979 contract confirms that it refers to Hodge's services as a real estate salesman, rather than to his services as a property manager. The contract refers to Hodge as a "Broker" and Kun as a "Principal," and states that it pertains to "real estate purchased by Principal as a result of the efforts and assistance of Broker." The contract does not mention Hodge's services as a property manager.

## IV

Hodge also argues that Coldwell Banker and AAA Realty assigned him their rights to collect commissions on the four proper-

ties from Kun. Under Arizona law, a licensed real estate salesman who has been assigned his broker's right to a commission arguably is entitled to sue the principal directly for the commission. *See Bustrum v. Gardner,* 154 Ariz. 409, 743 P.2d 5, 6–7 (App.1987) (holding that an out-of-state broker who has been assigned an Arizona broker's right to a commission may bring an action to recover that commission from the principal because an assignment allows the assignee to stand "in the same position" as the assignor). Hodge does not claim that there were express assignments of Coldwell Banker's and AAA Realty's rights to commissions to him, but rather that there were "equitable" assignments of these rights to him.

■ Since "the intent of the parties governs whether an equitable assignment has been made," *Morton v. Rogers,* 20 Ariz. App. 581, 514 P.2d 752, 757 (1973), the existence of an equitable assignment is essentially a question of fact. Hodge claims for the first time on appeal that AAA Realty equitably assigned him its rights to commissions on the Eastern Arms/Western Arms and Tempe Bel Air Apartments. We will consider an issue of fact for the first time on appeal if extraordinary circumstances prevented the issue from being raised below and review is necessary to avoid manifest injustice. *International Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL–CIO v. Martin Jaska, Inc.,* 752 F.2d 1401, 1404 (9th Cir. 1985). Hodge has offered no explanation for his failure to argue below that AAA Realty assigned him the rights to these commissions. We therefore decline to consider this issue.

■ Hodge argued below that Coldwell Banker equitably assigned him its rights to commissions on the Arizona Ambassador Hotel and the Camelback Village Properties. However, the record strongly suggests that Coldwell Banker was never involved in the sale of these properties and thus never had any rights to commissions

on the Ambassador Hotel and Camelback Properties. The sales documents do not indicate any involvement on the part of Coldwell Banker.[2] Further, a representative of Coldwell Banker testified that "[w]e have no records of those properties. Those were not through Coldwell Banker."

### V

■ Hodge argues that the BAP erred in holding that ARS 12–341.01 permits the court to award attorney's fees only to prevailing parties. ARS 12–341.01 has two distinct subsections authorizing the award of attorney's fees. Section 12–341.01(A) permits a court to award attorney's fees in a contested action "arising out of a contract" only to "the successful party." Section 12–341.01(C) contains no such express limitation. This provision states that "[r]easonable attorney's fees shall be awarded by the court in any contested action upon clear and convincing evidence that the claim or defense constitutes harassment, is groundless and not made in good faith." Although the bankruptcy court did not specify that its award of $100,000 in attorney's fees in this case was made pursuant to § 12–341.01(C), the court used the language of that subsection and thus indicated that the award was made pursuant to that subsection:

> The Court ... hereby finds that the claims and defenses raised by Kun as to the validity and enforceability of the Real Estate Agreement, and regarding the genuineness of his signature on such agreement, his whereabouts at the time his signature on such agreement was notarized, and his knowledge about the agreement and the contents thereof, constituted harassment, were groundless, and were not made in good faith.

We do not read § 12–341.01(C) as implicitly limiting the award of attorney's fees to prevailing parties. No Arizona court has interpreted this subsection as implicitly limiting the award of attorney's fees to prevailing parties. Moreover, an interpreta-

**2.** Arizona real estate regulations in effect in 1976 required that all contracts to purchase realty "be approved in writing on the document

by the broker...." Ariz. Real Estate Department Regulations R4–28–14(B)(4).

tion of § 12–341.01(C) which limited the award of attorney's fees to prevailing parties would be inconsistent with its purpose. The purpose of § 12–341.01(C) is to punish and deter vexatious and groundless litigation. *See Gilbert v. Board of Medical Examiners*, 155 Ariz. 169, 745 P.2d 617, 628 (App.1987). The mere fact that a party has prevailed in a suit does not mean that the party has not engaged in vexatious and groundless litigation. For example, a party may combine sound and ultimately successful defenses with frivolous ones designed solely to harass the opposing party.

The bankruptcy court clearly was mistaken in finding that Kun's § 32–2155 defense constituted harassment, was groundless, and not made in good faith. Since the BAP erroneously concluded that § 12–341.01 prohibits the award of attorney's fees to an unsuccessful party, the BAP did not review the bankruptcy's finding that Kun's other claims and defenses also constituted harassment, were groundless, and not in good faith. On remand, the BAP should review this finding for clear error. The BAP should then remand to the bankruptcy court. The bankruptcy court should then award whatever attorney's fees (if any) it considers appropriate in light of the BAP's and our decision in this case.

In conclusion, we affirm the portion of BAP's decision holding that the 1979 contract is unenforceable and reversing the damages award. However, we reverse the portion of the BAP's decision reversing the attorneys' fees award and remand for further proceedings consistent with this opinion. We deny both Hodge's and Kun's requests for attorney's fees and costs incurred in this appeal.

AFFIRMED in part, REVERSED in part, and REMANDED.