TJOFLAT, Chief Judge:
 

 This case involves a turnover proceeding brought in the Bankruptcy Court for the Middle District of Florida. The trustee in the bankruptcy sought an order requiring Angelina Gallucci (Mrs. Gallucci) to vacate her home in Warwick, Rhode Island and to turn over the possession thereof to him. During the proceeding, Mrs. Gallucci failed to appear for a deposition, and the bankruptcy court, on the trustee’s motion, entered an order striking her defensive pleadings as a sanction for her failure to discover. She appealed to the district court, and that court affirmed.
 

 I.
 

 Mrs. Gallucci’s son, Michael Gallucci, Jr., became insolvent in 1981,
 
 [1]
 
 and a trustee, Charles Grant, was appointed to administer the bankruptcy estate.
 
 [2]
 
 In 1984, Grant instituted an adversary proceeding against Mrs. Gallucci, among others,
 
 [3]
 
 claiming that her home was property of the estate and must be turned over to the trustee pursuant to 11 U.S.C. § 542 (1988).
 
 [4]
 
 Mrs. Gal-lucci subsequently filed an action in the Superior Court of Rhode Island to quiet title to the property. Grant removed that action to the United States Bankruptcy Court for the District of Rhode Island; that court transferred it to the Bankruptcy
 
 *698
 
 Court for the Middle District of Florida, which consolidated the quiet title and turnover proceedings for trial pursuant to Fed. R.Civ.P. 42(a).
 

 Mrs. Gallucci, an elderly, bedridden widow, relied on her attorneys to defend against the turnover of her home. On December 2, 1986, Chester Trow, counsel for the trustee, served a notice of deposition, and a request for production of documents on Mrs. Gallucci’s counsel in Florida, William Day. Trow later contacted Day to schedule the deposition, and Day told him that he was uncertain if Trow would be allowed to depose Mrs. Gallucci because she was just beginning to recover from major exploratory surgery. Day, however, did not seek a protective order.
 

 Believing that the deposition would proceed, Trow traveled to Rhode Island, but Mrs. Gallucci did not appear at the appointed place and time.
 
 [5]
 
 Trow returned to the bankruptcy court, asking it to sanction Mrs. Gallucci for the discovery violation, and the court obliged, charging her with the expenses and attorney’s fees that Grant had incurred ($3,193.30).
 
 See
 
 Bankr.R. 7037 (incorporating by reference Fed.R.Civ.P. 37).
 
 [6]
 
 Mrs. Gallucci did not pay the sanction within the time allowed by the court,
 
 [7]
 
 and, after four extensions, the court struck her pleadings, entering a default against her and barring her from participation at trial
 
 [8]
 
 in the turnover proceeding (Nos. 87-250-Civ-Oc-12, 88-48-Civ-Oc-12), and dismissing with prejudice her quiet title action (No. 87-251-Civ-Oc-16). Mrs. Gallucci appealed. The district court affirmed the sanctions order and final judgment in the turnover action — the subject of the instant appeal; when the quiet title action came before the district court (the appeals had proceeded separately), the court stayed it pending the resolution of this appeal.
 

 In his turnover complaint, the trustee alleged that the Rhode Island property was part of the bankruptcy estate as of the commencement of the case or, alternatively, that the property later was conveyed to the estate as a gift. Grant conceded at trial, however, that the debtor did not hold an interest in the property at the commencement of bankruptcy;
 
 [9]
 
 he relied entirely on his alternative claim that the estate obtained title to the property by gift in the following series of transactions. Until 1970, Mrs. Gallucci and her husband, Michael Gallucci, Sr., owned the property jointly. On October 2, 1970, Michael Gal-lucci, Sr., transferred his interest in the property to the couple’s daughter-in-law, Patricia Gallucci — the debtor’s wife. On November 3, 1972, Mrs. Gallucci also transferred her interest in the property to Patricia Gallucci, leaving Patricia with a fee simple interest in it. In June 1980, Patricia purported to convey the property to Robert Gaudio, a family friend residing in Florida.
 
 [10]
 
 Gaudio, in turn, quitclaimed the
 
 *699
 
 property to the trustee in January 1984.
 
 [11]
 

 At trial, the bankruptcy court considered the possibility that Mrs. Gallucci’s entitlement to the property was superior to the trustee’s. First, it noted that in a deed, dated January 12,1983, Gaudio purportedly conveyed his interest in the property to Decorative Statues, Inc. (a corporation in which Patricia Gallucci had a majority stake); another deed, dated February 25, 1983, conveyed the property from Decorative Statues to Mrs. Gallucci. If these two deeds, both executed prior to the deed from Gaudio to the trustee, were valid, then Mrs. Gallucci would be the record owner of the property. The bankruptcy court found, however, that the deed from Gaudio to Decorative Statues was forged and, consequently, that even though the appellant held a deed conveying the property from Decorative Statues to her, she could not claim under it. Thus, it entered a final judgment ordering Mrs. Gallucci to turn over the property to the bankruptcy estate.
 

 On appeal to us, appellant contends that the bankruptcy court (1) did not have jurisdiction to decide the turnover action against Mrs. Gallucci since that action involved property that concededly never had belonged to the debtor; and (2) abused its discretion by (a) sanctioning Mrs. Gallucci rather than her attorney for discovery abuse; (b) striking Mrs. Gallucci’s pleadings although she did not willfully disobey the court’s sanctions order; and (c) refusing to remove the trustee’s counsel from the case due to his conflicts of interest.
 
 [12]
 
 Thus, Mrs.. Gallucci contends, the district court erred in affirming the bankruptcy court’s orders and final judgment.
 

 We conclude that the bankruptcy court lacked jurisdiction to order a turnover of this property and that, consequently, the case must be dismissed; accordingly, we do not discuss Mrs. Gallucci’s other challenges.
 

 II.
 

 Although bankruptcy courts by statute may hear “any or all cases under title 11 and any or all core proceedings arising under title 11 or arising in or related to a case under title 11,” 28 U.S.C. § 157(a) (1988), they may not entertain cases involving noncore, unrelated matters,
 
 see, e.g., Pacor Inc. v. Higgins,
 
 743 F.2d 984, 994 (3d Cir.1984) (“[Jjurisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist.”) (quoting
 
 In re Hang,
 
 19 B.R. 223, 224-25 (Bankr.D.Ore.1982));
 
 In re Holland Indus.,
 
 103 B.R. 461, 465 (Bankr.S.D.N.Y.1989) (“Bankruptcy courts have no jurisdiction to entertain civil proceedings that are neither core proceedings nor related proceedings:”). The instant case involves property that never belonged to the debtor but that a third party, Gaudio, quitclaimed to the trustee to “compromise” the trustee’s concededly baseless claim against him.
 
 [13]
 
 We now consider whether the bankruptcy court had jurisdic
 
 *700
 
 tion to entertain a turnover action involving this property, i.e., was this action a core or related proceeding to Michael Gallucci, Jr.’s bankruptcy.
 
 [14]
 

 Applications for turnover orders ordinarily are core proceedings within the jurisdiction of the bankruptcy courts.
 
 See
 
 28 U.S.C. § 157(b)(2)(E) (1988) (core proceedings include “orders to turn over property of the estate”). Whenever, a trustee brings a turnover action, he must establish, however, as part of his invocation of the bankruptcy court's summary jurisdiction, that the property he seeks to recover in the turnover action is “property of the bankruptcy estate” (property that will be available for distribution by the trustee).
 
 See
 
 11 U.S.C. § 541 (1988) (defining property of the estate). If the action does not involve property of the estate, then not only is it a noncore proceeding, it is an unrelated matter completely beyond the bankruptcy court’s subject-matter jurisdiction.
 
 [15]
 
 This can be gleaned from a general principle of bankruptcy law: if the resolution of litigation cannot affect the administration of the estate, the bankruptcy court does not have jurisdiction to decide it. For example, in
 
 In re Denalco Corp.,
 
 57 B.R. 392 (N.D.I11. 1986), two secured creditors asked the bankruptcy court to determine which of them had the superior interest in a piece of the debtor’s equipment; the bankruptcy trustee disclaimed any interest in the equipment since the creditors’ claims exceeded its value. On these facts, the district court held that the action was a non-core, unrelated matter; the resolution of the creditors’ competing claims could not affect either the assets or the liabilities of the debtor’s estate.
 
 Id.
 
 at 395;
 
 see also Pacor Inc.,
 
 743 F.2d at 995;
 
 In re Dicken-son Lines,
 
 47 B.R. 653, 656 (Bankr.D.Minn. 1985) (“The usual test for determining whether a civil proceeding is related to a bankruptcy proceeding is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.”);
 
 In re McKinney,
 
 45 B.R. 790, 791-92 (Bankr.W.D.Ky.1985) (“it is only upon ‘property of the estate’ that this Court has ever been permitted to have any direct judicial impact”).
 

 In the instant case, the trustee contends that the Rhode Island property became property of the estate as a result of Gaudio’s quitclaim deed to him. Grant notes that property of the estate includes, in addition to “all legal and equitable interests of the debtor in property as of the commencement of the case,” 11 U.S.C. § 541(a)(1), “[a]ny interest in property that the estate acquires
 
 after
 
 the commencement of the case,”
 
 id.
 
 § 541(a)(7) (emphasis added). Thus, according to the trustee, the property became “property of the estate” through Gaudio’s gift, and the bankruptcy court, in the subsequent turnover action, simply could assert jurisdiction on the basis of the title documents, regardless of the debtor’s interest in the property or the relation of the property to the bankruptcy
 
 *701
 
 estate. In other words, the trustee established jurisdiction by compromise, insulating from inquiry the nature of the property and its connection with the bankruptcy estate prior to settlement.
 
 [16]
 

 Although the after-acquired property provision, section 541(a)(7), could be read broadly to include any interest that the estate acquires after the commencement of the bankruptcy, regardless of the debtor’s interest in it, we do not think that this was Congress' intent. We agree with the trustee that section 541(a)(7) allows him to contract on behalf of the estate or to recover beneficial rights and interests that the debtor may have in property of another; according to the legislative history of this provision,
 

 [section 541(a)(7)] clarifies that any interest in property that the estate acquires after the commencement of the case is property of the estate; for example, if the estate enters into a contract, after the commencement of the case, such a contract would be property of the estate. The addition of this provision by the House amendment merely clarifies that section 541(a) is an all-embracing definition which includes charges on property, such as liens held by the debtor on property of a third party, or beneficial rights and interests that the debtor may have in property of another. However, only the debtor’s interest in such property becomes property of the estate. If the debtor holds bare legal title or holds property in trust for another, only those rights which the debtor would have otherwise had emanating from such interest pass to the estate under section 541.
 

 124 Cong.Rec. 32,399 (1978) (House);
 
 id.
 
 at 33,999 (Senate);
 
 see also
 
 4 Collier on Bankruptcy ¶ 541.20 (15th ed. 1991). We do not believe, however, that Congress intended section 541(a)(7) to extend to gifts of property having no connection to the debtor and not contracted for by the estate — in effect, conveyances coerced by the trustee.
 

 In the instant case, the trustee concedes that the debtor never had an interest in the Rhode Island property;
 
 [17]
 
 rather, the trustee sought turnover based upon the deed he obtained from Gaudio.
 
 [18]
 
 The bankruptcy court relied entirely upon the “compromise” the trustee convinced Gaudio to enter to determine whether the property the trustee sought was property of the estate. We believe, however, that the bankruptcy court should have inquired,
 
 sua suponte,
 
 
 *702
 
 into the compromise and determined if it, in fact, resulted in the acquisition of property of the estate.
 
 Cf In re Denalco Corp.,
 
 57 B.R. at 895 (the court “is obligated to raise the jurisdictional issue sua sponte where it appears with certainty the parties should have known their dispute would have no impact on the administration of ... bankruptcy”). In other words, the court must examine a compromise in which property is transferred to the estate (and thus is alleged to be property of the estate) and determine if the compromise merely effected a return of the debtor’s property
 
 [19]
 
 or, rather, was a gift of property unrelated to the debtor and the bankruptcy estate. If the court finds the latter, the turnover action is a noncore, unrelated matter that the court must dismiss for want of jurisdiction. This was the case here.
 
 [20]
 

 III.
 

 Since the bankruptcy court lacked jurisdiction to decide this case, we VACATE the district court’s judgment and direct the district court to vacate the bankruptcy court’s sanctions order and to dismiss this action for want of subject-matter jurisdiction in the bankruptcy court.
 

 IT IS SO ORDERED.
 

 
 *703
 
 896 931 FEDERAL REPORTER, 2d SERIES UNITED STATES COURT OF APPEALS Ninth Circuit DECISIONS WITHOUT PUBLISHED OPINIONS Appeal from and Citation (if reported) Bkrtcy.App. 9 Title Kavanagh v. U.S. Docket Number Date 90-15033 5/6/91 Disposition APPEAL DISMISSED [143]
 

 
 *704
 
 931 FEDERAL REPORTER, 2d SERIES 897 DECISIONS WITHOUT PUBLISHED OPINIONS — Continued Title Kun, In re. Kun v. Hodge. Littleton, In re. Northland Aviation, Inc., In re Transamerica Commercial Finance Corp. v. Littleton ... Docket Number 89-16595 88-1697 Date 4/29/91 4/29/91 Disposition AFFIRMED AFFIRMED 90-15002 5/7/91 AFFIRMED 90-15033 5/6/91 APPEAL DISMISSED Appeal from and Citation (if reported) Bkrtcy.App. 9; Appealing after remand 868 F.2d 1069 Bkrtcy.App. 9; Appealing after remand 868 F.2d 1069 Bkrtcy.App. 9, 106 B.R. 632 Bkrtcy.App. 9 90-15002 5/7/91 AFFIRMED Bkrtcy.App. 9, 106 B.R. 632 [144]
 

 
 *705
 
 931 FEDERAL REPORTER, 2d SERIES DECISIONS WITHOUT PUBLISHED OPINIONS — Continued Appeal from Docket and Citation Title Number Date Disposition (if reported) U.S. v. Weinstein. 88-1440, 4/24/91 AFFIRMED N.D.Cal. 89-10062, 89-10320 899
 

 [1]
 

 . The bankruptcy commenced under chapter 11 on December 11, 1981, and converted to chapter 7 in 1984.
 

 [2]
 

 . The Bankruptcy Court for the Middle District of Florida presided over the case.
 

 [3]
 

 . The complaint for turnover named Michael Gallucci, Jr., Patricia Gallucci, and Decorative Statues, Inc., in addition to Mrs. Gallucci.
 

 [4]
 

 . Grant sought, in effect, to quiet title to the property — not merely to obtain possession of it. For a discussion of the propriety of using a turnover proceeding to quiet title, see
 
 infra
 
 note 13.
 

 [5]
 

 . Later, Day reported to the bankruptcy court that Mrs. Gallucci had been too sick to be deposed.
 

 [6]
 

 . The bankruptcy court did not consider whether the sanctions should be imposed on Mrs. Gallucci or her counsel (or both), after weighing the culpability of each in the abuse. Rather, it imposed the full cost on Mrs. Gallucci.
 

 [7]
 

 . Mrs. Gallucci contends that she did not willfully disobey the court’s order — she did not have the means to pay the sanction.
 

 [8]
 

 . The matter still proceeded to trial since the trustee sought the turnover order against Michael Gallucci, Jr., Patricia Gallucci, and Decorative Statues, Inc., in addition to Mrs. Gallucci.
 
 See supra
 
 note 2.
 

 [9]
 

 . The debtor only appeared in the chain of title on the two occasions he purportedly released his curtesy rights in the property. Since curtesy rights were abolished in Rhode Island in 1979,
 
 see
 
 R.I.Gen.Laws § 33-25-1 (1984), his releases were meaningless. Although he may have had a curtesy right in the property prior to the statutory abolition of curtesy, the trustee makes no claim — nor, in our opinion, could he — on the basis of that interest.
 

 [10]
 

 . Gaudio testified that he had no knowledge that a deed had been executed conveying the property to him until the trustee approached him in 1984 and requested that he quitclaim the property to the estate. Mrs. Gallucci now contends that there was no delivery to Gaudio and thus he cannot claim the property under that deed. Given our disposition of this case, it is unnecessary for us to address this point.
 

 [11]
 

 . Although the deed from Gaudio to Grant recites consideration of “ten dollars and other good and valuable consideration,” Grant claims that he used no estate funds to purchase Gaudio’s interest in the property. Apparently, Grant approached Gaudio and told him that property, in which Gaudio might have an interest, actually belonged to the debtor and that he must quitclaim his interest in the property to avoid litigation. Gaudio, denying that he had an interest in the property,
 
 see supra
 
 note 9, quickly capitulated, deeding the property to Grant.
 

 [12]
 

 . Mrs. Gallucci claimed that Trow, after his appointment as counsel to the chapter 11 trustee, continued to represent creditors of the estate contrary to 11 U.S.C. § 327(a) (1988). She moved the bankruptcy court to disqualify Trow, but that court denied her motion, holding that she did not have standing to raise this claim. Since we hold that the trustee's action must be dismissed for lack of jurisdiction,
 
 see infra,
 
 the district court must direct the bankruptcy court to vacate this order.
 

 [13]
 

 .The trustee claims that
 

 [he] became suspicious of a possible concealment of assets by the debtor in Rhode Island under the name of Robert Gaudio. As a result of that suspicion, [he] contacted Mr. Gaudio in Ocala, Florida, concerning the property. Mr. Gaudio disclaimed all knowledge of the property and on request by the Trustee ... executed and delivered to the Trustee the deed which is the basis of the Trustee’s title.
 

 [14]
 

 . Although we do not decide the point, we question whether a trustee may seek recovery of real estate in a turnover proceeding, essentially a judgment quieting title to the property. Section 542 of the Bankruptcy Code
 

 was never designed to apply to the Trustee’s attempt to obtain title to real property which he alleges is property of the estate. Instead, § 542 was designed to allow the Trustee to obtain possession of tangible personal property belonging to the Debtor, but that is in the possession of another.
 

 In re Williams,
 
 91 B.R. 609 (Bankr.M.D.Fla. 1988). In addition, when a bankruptcy court uses turnover proceedings to quiet title to real estate that is located in another jurisdiction and has no connection to the debtor, title to which is claimed by a party having no contact with the forum, we believe that substantial due process concerns are implicated.
 

 Some courts, however, have used turnover proceedings to effect a transfer of possession of real estate. For example, in
 
 In re Southern Metal Prods. Corp.,
 
 26 F.Supp. 666 (N.D.Ala. 1939), the court, without discussing the point, allowed a trustee to use a turnover action to oust a receiver from property that he occupied after a creditor foreclosed on a fraudulent mortgage.
 
 See also
 
 2 Collier on Bankruptcy § 23.10, at 561 & n. 2 (14th ed. 1974) (real estate is subject to turnover orders).
 

 [15]
 

 . In litigation that is "related to” a title 11 case, the bankruptcy court submits proposed findings of facts and conclusions of law to the district court, 28 U.S.C. § 157(c)(1) (1988), or, with the consent of the parties, enters appropriate orders and judgments,
 
 id.
 
 § 157(c)(2).
 

 [16]
 

 . If the trustee first had proceeded against Mrs. Gallucci rather than taking Gaudio’s deed, the bankruptcy court clearly would not have had jurisdiction to try the turnover action.
 

 [17]
 

 . Although the trustee contends that he approached Gaudio with the good faith belief that the Rhode Island property had been property of the debtor at the commencement of the case, there is no evidence in the record that could have supported such a belief. The title documents to the property, for example, never reveal that Michael Gallucci, Jr. held an interest in the property at that time — nor is there any testimony to support such a conclusion.
 

 The trustee could have advanced only one theory to show that the debtor owned the property. The debtor’s parents, Mrs. Gallucci and Michael Gallucci, Sr., transferred the property to Patricia Gallucci, their daughter-in-law, not in fee simple, but to hold in trust for their son, Michael Gallucci, Jr. Then, Patricia Gallucci transferred the property to Gaudio, not as a gift to him, but again in trust for the debtor. Thus, the debtor would have maintained an interest in the property.
 

 There is, however, no evidence in the record to indicate that the bankruptcy trustee believed that a trust was intended. At best, he misread the record and thought that Michael Gallucci, Sr. was the debtor (even traveling on this theory he could not claim that Michael Gallucci, Sr. still owned the property either at commencement of the bankruptcy or within the fraudulent or preferential transfer period) or that Michael Gallucci, Jr. had obtained curtesy rights in the property through his wife (for a discussion of the debtor’s curtesy rights, see
 
 supra
 
 note 8); at worst, the trustee sought to coerce someone in the chain of title to quitclaim the property to him knowing that he could not prove that the debtor had a legal or equitable interest in the property when bankruptcy supervened or that the debtor had fraudulently or preferentially transferred it.
 

 [18]
 

 .By complying with the trustee’s demands that he quitclaim the property to the trustee rather than merely, by affidavit, disclaim any interest in the property, Gaudio risked wrongfully encumbering the title of the property belonging to another. (Gaudio should have been concerned with this risk. He testified that he did not know that he appeared in the chain of title of the property and, in fact, believed that someone else must own it.)
 

 [19]
 

 . Or the court could determine that, although the property now is owned by a third party, it was preferentially or fraudulently transferred (within the statutory period).
 
 See
 
 11 U.S.C. §§ 547, 548 (1988).
 

 [20]
 

 . In the instant case, it is not necessary to remand the case to the bankruptcy court for a determination of whether the property was part of the debtor’s estate at the commencement of bankruptcy since the trustee has conceded that it was not.