[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-16182

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 21, 2006
THOMAS K. KAHN
CLERK

D. C. Docket Nos. 04-60475-CV-DLG & 03-26791-BKC-PG

In Re: HAPPY HOCKER PAWN SHOP, INC.,

                                                            Debtor.

_____

KENNETH A. WELT,

                                                            Plaintiff-Appellant,

                              versus

MJO HOLDING CORP. ,
and BALISTRERI REALTY, INC.

                                                            Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(December 21, 2006)**

Before PRYOR and FAY, Circuit Judges, and STEELE,* District Judge.

_____
        * Honorable William H. Steele, United States District Judge for the Southern District of
Alabama, sitting by designation.

PER CURIAM:

This case arose after the appellant, Kenneth A. Welt, a bankruptcy trustee for an insolvent pawnshop, closed a solvent pawnshop in the mistaken belief that it held some of the debtor's inventory. The debtor had actually assigned its inventory to the owner of the pawnshop nearly one year before it filed for bankruptcy. Welt's appeal turns on the question of whether he acted outside the scope of his authority when he closed the non-debtor business. Welt's actions prompted the owner of the affected pawnshop, M.J.O. Holding Corporation ("M.J.O."), to file adversarial proceedings against him in bankruptcy court. Those proceedings culminated in a declaratory judgment that Welt had acted outside the scope of his authority. Shortly thereafter the bankruptcy court entered an Agreed Final Judgment on this matter. M.J.O. and its real estate agent, Balistreri Realty, Inc. ("Balistreri") then motioned for leave to sue Welt in state court. They appended a proposed complaint that alleged various tort claims, including one for tortious interference with a contract involving the sale of real property. The bankruptcy court granted their motion, holding that the claims sounded in state law and did not arise under the Bankruptcy Code. Welt appealed the ruling to district court, which affirmed the bankruptcy court. For the reasons stated below, we affirm the district court's decision.

## BACKGROUND

On October 20, 1999, Michael O'Neal sold his stock in "Happy Hocker, Inc.," a corporation that operated a pawnshop at 4525 N.W. 8th Avenue in Fort Lauderdale, Florida, to Guadalupe Garcia. O'Neal's father had opened the pawnshop twenty-five years earlier under the name "Happy Hacker PawnShop" ("HHP"). O'Neal's company M.J.O., helped Garcia finance the purchase of the pawnshop, and Garcia signed a promissory note that gave M.J.O. a security agreement in the pawnshop as part of the deal.

Garcia registered her newly acquired business as the "Happy Hocker Pawn Shop," ("HHPS"), altering the name of the pawnshop just slightly from the HHP name that the O'Neals used during their tenure as owners of the shop. Two years after HHPS took over the pawnshop, however, HHPS fell behind on its mortgage payments to M.J.O. Rather than face foreclosure, Garcia signed over all of HHPS's inventory to M.J.O. on November 16, 2002. She made the assignment in a letter, but M.J.O. never recorded it.

Thereafter, M.J.O resumed operations of the pawnshop under the O'Neal family's former moniker, HHP. M.J.O. registered the name HHP with the State of Florida and obtained the necessary licenses to operate the business. After M.J.O. operated the pawnshop for approximately nine months, however, it decided to sell

3

it. M.J.O. engaged Balistreri to broker the property on June 18, 2003 at a list price of $399,000.00. By September 12, 2003, Balistreri had identified a prospective buyer who was willing to pay $350,000.00 for the business, and it relayed the purchase offer to M.J.O.

Less than a week later, on September 17, 2003, Garcia filed a petition for voluntary liquidation of HHPS pursuant to Chapter 7 of the Bankruptcy Code. When she filled out item 33 on "Bankruptcy Schedule B," which addressed the debtor's assets, Garcia listed the following HHPS property: "Personal property of pawn shop located at 4525 N.W. 8th Avenue Ft. Lauderdale, FL 33309." In the portion of the petition entitled "Statement of Financial Affairs," however, Garcia noted that HHPS had returned approximately $150,000.00 of inventory at the N.W. 8th Avenue pawnshop to one "Michael O'Neal."

The bankruptcy court appointed Kenneth A. Welt as interim Trustee for HHPS the day after it received Garcia's petition. Welt moved rapidly to secure the property that appeared on Schedule B. He visited the address that Garcia listed on the schedule of assets and spoke with Michael O'Neal that very next day, on the 19th of September. O'Neal, insists that he showed Welt papers that documented M.J.O.'s ownership of the inventory and that Welt told him that he would review

4

the paperwork. Welt returned several hours later, however, and closed the business over O'Neal's objections.

M.J.O. promptly filed an adversary action in HHPS's debtor proceedings, petitioning the court to issue a declaratory judgment that the debtor, HHPS, had transferred its property interests in the pawnshop to M.J.O. ten months beforehand, and that as a consequence, the debtor no longer had any interests in the pawnshop. M.J.O. also petitioned the court for injunctive relief, asking the court to prohibit Welt from interfering with the pawnshop's business and to order him to return the inventory that he confiscated and to order the pawnshop reopened.

The bankruptcy court held an emergency hearing on M.J.O.'s motion to reopen the business on September 24th, 2003. Included in the evidence was the letter that M.J.O. received from Garcia in 2002, which assigned HHPS's inventory to M.J.O. in satisfaction of a lien. Based upon the evidence presented, the bankruptcy court ordered the pawnshop reopened. The order stated that the trustee had no right to take possession of M.J.O.'s assets, but advised him that he could file an avoidance action without prejudice. Welt did not appeal the court's order to reopen the business, nor did he file an avoidance action. Instead, he agreed with M.J.O. to move for an entry of final judgment on October 20, 2003. On October

28, 2003, the bankruptcy court entered the Agreed Final Judgment and Findings of Fact and Conclusions of Law.

With respect to the confiscated inventory, the court found that the debtor had transferred it to M.J.O. by letter on November 16, 2002. The court also found that HHPS did not initiate bankruptcy proceedings until September 17, 2003 and that Welt, who had been appointed interim Trustee for HHPS's case on September 18, 2003, caused the locks to be changed at M.J.O.'s business on September 19, 2003. Therefore, the court concluded that, as a matter of law, Welt had no right to take possession of M.J.O.'s assets on September 19, 2003, but the court noted that the Trustee might have a right to file an avoidance action.

There was no appeal of the agreed to final judgment order. Accordingly, the bankruptcy court granted M.J.O's pending Motion to Dismiss on December 1, 2003. Then, on December 9, 2003, M.J.O. reappeared before the court, accompanied by its real estate agent, Balistreri, and filed a Motion for Leave to Sue Trustee in State Court. They appended a proposed complaint that alleged various tort claims, such as, trespass to property and personal property, conversion, and tortious interference with contracts for the purchase and sale of real property.

Welt objected to their motion, arguing that he did not exceed the scope of his authority as a Trustee, that his actions were consistent with his duties to protect the assets that the debtor listed on the Bankruptcy Schedule, and that he should be entitled to qualified immunity as a result. The following day, Welt filed a Motion to Reconsider the Dismissal of this Case.

On February 11, 2004,the bankruptcy court denied Welt's motion to reconsider dismissal of the case, amending its earlier dismissal order to note that the court retained jurisdiction solely to consider M.J.O. and Balistreri's Motion for Leave to Sue the Trustee in State Court. And with that, the court also granted M.J.O. and Balistreri's motion for leave to sue Welt in state court on the grounds that it lacked subject matter jurisdiction.

Since the movants' causes of action sounded in Florida torts law, and did not invoke any substantive rights created under the Bankruptcy Code, their claims could not, by definition, "arise under" the Bankruptcy Code, the court reasoned. The court also rejected Welt's alternative argument for retaining the case in bankruptcy court - that the claims related to the bankruptcy case before it. The outcome of the proposed state lawsuit would not alter the debtor's rights, liabilities options or freedom of action one iota, the court noted, and thus, the court could not exercise subject matter jurisdiction over the proposed tort claims.

Welt immediately moved for a rehearing on this issue, but the bankruptcy court denied his motion on March 1, 2004. Thereafter, Welt filed an appeal with the district court, arguing that the bankruptcy court erred when it refused to reconsider its dismissal order and granted M.J.O. and Balistreri leave to sue him in state court. Welt insisted that he closed the pawnshop pursuant to his authority as a bankruptcy trustee and that the closure of the pawnshop represented a "core proceeding" under the Bankruptcy Code. Alternatively, he argued, as he did to the bankruptcy court, that the challenged closure "related to" the administration of HHPS's case, and that the bankruptcy court should have exercised jurisdiction over M.J.O. and Balistreri's complaint.

The district court denied Welt's appeal on March 22, 2005 and Welt promptly filed a Motion for Reconsideration. In his motion, Welt argued that the district court relied too heavily upon the bankruptcy court's Agreed Final Judgment and Findings of Fact and Conclusions of Law in denying his appeal. Welt insisted that this reliance was misplaced because the bankruptcy court had entered the Agreed Final Judgment order without holding an evidentiary hearing, effectively denying Welt's rights to due process.

The court referred the matter to a magistrate for recommendations. On September 22, 2005, the magistrate recommended that the court deny Welt's

motion as he could have raised the due process issue by appealing the Final Judgment order, or in briefing his appeal to the district court, but he didn't, and that the remainder of his motion simply rehashed arguments that the court had already rejected. The district court adopted the magistrate's recommendations and denied Welt's motion for reconsideration of the dismissal order. Welt filed this appeal to challenge the district court's decision affirming the bankruptcy court order that granted M.J.O. and Balistreri leave to sue Welt in state court.

## STANDARD OF REVIEW

Welt's appeal turns on a question of law - whether the bankruptcy court could exercise jurisdiction in a civil suit for damages arising out of the *ultra vires* acts of a bankruptcy trustee. The district court found that the proposed complaint did not satisfy the proper jurisdictional tests as either a "core proceeding" or a matter "related to" a bankruptcy case under 28 U.S.C. § 157(b)(2)(A) and (O) or 28 U.S.C. § 1334(b). The question of whether Welt committed an *ultra vires* act when he closed M.J.O.'s pawnshop is not in dispute. The bankruptcy court concluded in its Agreed Final Judgment order that Welt had no right to seize M.J.O.'s assets, and Welt did not then, nor does he now, dispute this Judgment. In fact, as the title of the court's order indicates, all parties, including Welt, agreed to it.

9

A district court reviews a bankruptcy court's conclusions of law *de novo*. *In re Simmons*, 200 F.3d 738, 741 (11th Cir. 2000). In a bankruptcy case, the district court operates as an appellate court, and this Court functions as a "second court of review." *In re Sublett*, 895 F.2d 1381, 1383-1384 (11th Cir. 1990). Accordingly, we review both the bankruptcy court's conclusions of law and the district court's conclusions *de novo*. *In re Calvert*, 907 F.2d 1069, 1071 (11th Cir. 1990). Statutory interpretations also present questions of law that require *de novo* review. *United States v. Hooshmand*, 931 F.2d 725, 737 (11th Cir. 1991).

## ANALYSIS

*A. Federal Jurisdiction Over Any or All Proceedings "Arising Under" Title 11*

Federal district courts exercise jurisdiction over civil proceedings that arise under the Bankruptcy Code, title 11 of the United States Code, pursuant to 28 U.S.C. §1334(b), which holds, in pertinent part, that: "...the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[1] Although Congress granted the district courts jurisdiction over all civil proceedings that arise under

---

[1] Specifically, § 1334(b) states: "Except as provided in subsection(e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or other courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or relate to cases under title 11. Subsection (e)(2) grants the district court exclusive jurisdiction "over all claims or causes of action that involve construction of section 327, of title 11, United States Code [11 U.S.C. 327], or rules relating to disclosure requirements under section 327 [11 U.S.C. 327]."

the Bankruptcy Code, it provided that a district court could refer such proceedings to the bankruptcy judges for the district. 28 U.S.C. § 157(a).

Thus, these provisions give bankruptcy courts jurisdiction in three categories of civil proceedings: those that "arise under title 11," "those that arise in cases under title 11," and those "related to cases under title 11." *Continental Nat'l Bank v. Sanchez* (*In re Toledo*), 170 F.3d 1340, 1344 (11th Cir. 1999). 28 U.S.C. 157(b)(1) categorizes proceedings that arise under title 11, or that arise in a case under title 11 as "core proceedings."

28 U.S.C. § 157(b) sets forth fifteen different types of actions that can qualify as "core proceedings," defining some in very broad terms which might appear to apply here. However, this Court has found that the most helpful explanation of a "core proceeding" appears in the Fifth Circuit decision in *Wood v. Wood* (*In re Wood*), 825 F.2d 90(5th Cir. 1987). *In re Toledo*, 170 F.3d at 1348. Indeed, we adopted this explanation as a test for § 157(b) jurisdiction in *Toledo*. *Id*. As the Fifth Circuit explained in *Wood*:

> "[i]f the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of

11

> bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding."

*Id.* (*quoting In re Wood*, at 97). Moreover, as we cautioned in *Toledo*, a core proceeding must always implicate the property of the bankrupt estate. *Id*. (citing *Gallucci v. Grant* (*In re Gallucci*), 931 F.2d 738, 742 (11th Cir.1991)).

When we analyze the appellees' proposed complaint in these terms, we conclude, as the bankruptcy court, the federal magistrate, and the district court did, that the proposed complaint does not constitute a "core proceeding" under 28 U.S.C. § 157(b). The proposed complaint deals with conduct that occurred when Welt took possession of M.J.O.'s property by changing the locks on the doors of M.J.O.'s pawnshop. The bankruptcy court entered a declaratory judgment that Welt had no right to do this, and made a finding that M.J.O. acquired ownership of the confiscated property through assignment well before HHPS petitioned for bankruptcy. Welt agreed to this judgment. Thus, we are left with one uncontroverted fact - the bankruptcy estate did not exist when M.J.O. acquired ownership of the challenged property. Accordingly, the complaint that the appellees wish to file in state court could never qualify as a "core proceeding" of HHPS's bankruptcy estate because it alleges tortious actions against property that is not part of the bankrupt estate. See *In re Toledo*, 170 F.3d at 1348.

12

Additionally, the proposed complaint does not invoke a substantive right created by bankruptcy law. It alleges trespass against property, conversion of property and tortious interference with contracts. Title 11 of the U.S.C. does not give bankruptcy trustees the right to seize the property of a non-debtor. Finally, we note that the proposed complaint could arise outside of bankruptcy law. The appellees' allegations against Welt sound in state law, not federal law. Granted, this fact alone does not preclude a proceeding from qualifying as a core proceeding for the statute informs us that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. 157(b)(3); *In re Toledo*, 170 F.3d at 1349. However, we have noted that the question of whether a claim could only arise within the context of a bankruptcy proceeding is one of the tests under *Wood, In re Toledo,* 170 F.3d at 1349, and the proposed complaint fails to satisfy this test.

*B. Federal Jurisdiction Over Proceedings "Related To" a Case Under Title 11*

Although the bankruptcy court could not exercise jurisdiction over the appellees' proposed tort suit under 28 U.S.C. § 157(b), which addresses core proceedings, § 157(c)(1) provides another potential source of jurisdiction through "otherwise related" or non-core proceedings. Section 157(c)(1) sets the minimum requirements for bankruptcy jurisdiction. *In re Toledo*, 170 F.3d at 1345, citing E.

13

Scott Fruehwald, The Related to Subject Matter Jurisdiction of Bankruptcy Courts, 44 Drake L.Rev. 1, 7 (1995). See 1 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, P 3.01[4][c][I] (15th rev. ed. 2003).

To determine whether a civil proceeding satisfies the requirements for bankruptcy jurisdiction under 28 U.S.C. § 157(c)(1), we have adopted a test from one of our sister circuits, just as we did in determining whether a civil proceeding would warrant bankruptcy jurisdiction under § 157(b). *In re Toledo*, 170 F.3d at 1345. In *Miller v. Kemire, Inc.* (*In re Lemco Gypsum, Inc.*) 910 F.2d 784 (11th Cir. 1990), we determined whether the bankruptcy court could exercise "related to" jurisdiction according to a test that the Third Circuit applied in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir. 1984). The Third Circuit noted in *Pacor* that the usual test for determining whether a civil proceeding qualifies under § 157(c)(1) is "whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *In re Lemco Gypsum*, 910 F.2d at 788 (quoting *Pacor*, 743 F.2d at 994). In other words, "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)," it would satisfy the "related to" requirement of § 157(c)(1). *Id.*

When we subject the appellees' proposed complaint to this test, we find, just as the bankruptcy court, the magistrate, and the district court did, that it fails to

14

satisfy the requirements for "related to" jurisdiction. The damages that the appellees seek would not come out of HHPS's bankruptcy estate. The appellees' claims charge Welt with wrongdoing in his individual capacity. The bankruptcy estate would not be liable for Welt's acts. As the bankruptcy court concluded in the Agreed Final Judgment, Welt had no authority to seize M.J.O.'s assets. He was acting outside the scope of his authority as a trustee. Alternatively, even if Welt were to prevail in the appellees' proposed tort suit, HHPS would not derive any benefit from a judgment in his favor such as fees that would inure to the bankruptcy estate. Accordingly, the district court did not err when it found that the bankruptcy court could not exercise "related to" jurisdiction over appellees' proposed tort suit.

## CONCLUSION

The district court did not err in affirming the bankruptcy court's decision to grant M.J.O. and Balistreri leave to sue Welt in state court. Welt did not dispute the Agreed Final Judgment order in M.J.O.'s earlier adversarial proceeding which found that Welt had acted outside his authority as a trustee when he closed M.J.O.'s business. Both courts correctly ruled that the proposed complaint did not "arise under" the Bankruptcy Code, and did not "relate to" a proceeding in a

15

bankruptcy case. Accordingly, the Bankruptcy court lacked subject matter jurisdiction to resolve the claims against Welt.

**AFFIRMED**.