**In re Millard McAFEE, Debtor.**

**Bankruptcy No. 288–10513–11.**

United States Bankruptcy Court,
N.D. Texas,
Amarillo Division.

Oct. 10, 1990.

John Sims, Sims, Kidd, Hubbert & Wilson, Lubbock, Tex., for debtor.

John P. Harrington, Ray, Quinney & Nebeker, Salt Lake City, Utah, Steven L. Hoard, Mullin, Hoard & Brown, Amarillo, Tex., and John E. Leslie, Leonard, Marsh, Hurt, Terry & Blinn, Dallas, Tex., for First Sec. Bank of Utah, N.A.

## MEMORANDUM OF OPINION ON MOTION TO BE RELIEVED FROM THE AUTOMATIC STAY

JOHN C. AKARD, Bankruptcy Judge.

On February 16, 1990 First Security Bank of Utah, N.A. (First Security) filed suit against Cimarron Commodities, Inc., and various other parties in the United States District Court for the Northern District of Texas, Lubbock Division, No. CA–5–90–0034W. The complaint alleged that the defendants, both named and unnamed, participated in a check kiting scheme which resulted in significant damage to First Security. The complaint also alleged that the named and unnamed defendants violated the Racketeer Influenced and Corrupt Or-

ganizations Act, 18 U.S.C. § 1962. On April 16, 1990 First Security filed an amended complaint in that suit designating Panhandle Processing Company, Fred C. Goldston, and Millard McAfee as "other known parties".

On April 20, 1990 First Security filed a motion to be relieved from the Automatic Stay in the Chapter 11 proceedings of Millard F. McAfee (Debtor) in order to proceed in the United States District Court suit. The Debtor responded that First Security's claims were discharged by confirmation of the Debtor's Chapter 11 plan because the actions complained of in the United States District Court suit occurred prior to confirmation. The court finds that the claims have been discharged. The motion to be relieved from the Automatic Stay will be denied and the related Adversary Proceeding dismissed.

### Facts

On September 26, 1988 the Debtor filed for relief under Chapter 11 of the Bankruptcy Code. The court established January 6, 1989 as the last day for filing complaints objecting to the dischargeability of a debt pursuant to § 523 of the Bankruptcy Code.[1] Due notice of that deadline went to all creditors and parties in interest, including First Security. On December 15, 1988 First Security filed a motion to extend the time for filing a complaint under § 523(c) of the Bankruptcy Code. The case docket does not reveal that the Debtor filed an objection to that motion or that the motion was ever presented to the court for consideration.

On March 6, 1989 First Security filed Adversary Proceeding No. 289–2014 which sought to deny the dischargeability of a claim against the Debtor under § 523(a)(2). The allegations related to the check kiting scheme alleged in the United States District Court suit. The complaint also sought to deny the dischargeability of the claim under § 523(a)(6), alleging that the check kiting scheme constituted willful and mali-cious injury. On March 29, 1989 the Debtor filed an answer denying the complaints of First Security, denying that he received any money from the alleged scheme, and asserting that he first heard about the scheme when First Security told him about the checks in question. The answer did not assert that the complaint was untimely filed. The Adversary Proceeding was scheduled for trial on July 12, 1989. On July 10, 1989 First Security filed a motion for continuance on the grounds that it needed time for additional discovery. The court postponed the trial indefinitely.

On March 22, 1989 the Debtor filed an objection to the claim of First Security. On April 7, 1989 First Security filed a response to that objection.

On April 3, 1989 the Debtor filed his plan of reorganization and disclosure statement. The court scheduled a hearing on the adequacy of the disclosure statement for May 16, 1989. At that time, the Debtor and various creditors, including First Security, announced to the court that they were negotiating changes in the plan and disclosure statement. As a result of those negotiations the Debtor filed an amended plan and disclosure statement on May 25, 1989. The court approved the amended disclosure statement. A confirmation hearing was held on June 20, 1989. At that time the Debtor and various creditors, including First Security, announced further agreements which modified the Debtor's plan of reorganization. These agreements were carried forward in a joint motion of the Debtor, First Security, and various other creditors, filed on August 4, 1989, to modify the amended plan of reorganization and for confirmation of the amended plan as modified. The court found that the amendments did not adversely affect creditors who were not parties to the amendments and confirmed the plan on August 4, 1989.

A transcript of the June 20, 1989 hearing was attached to the joint motion of August 4, 1989. At that hearing, the Debtor and various other creditors withdrew their ob-

---

**1.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

jections to the claim of First Security and the parties agreed that the claim of First Security would be approximately $3,361,-000.00. The attorney for First Security then stated to the court as follows:

> Pursuant to withdrawal of the objection to our claim by Debtor and Southwest Hide and Hereford Bi–Products, First Security is prepared at this time and with the concurrence with the court to withdraw their negative vote and to change that to an affirmative vote in favor of the plan.

The court allowed the change of vote.

The Amended Plan of Reorganization filed by the Debtor on May 25, 1989 divided the creditors into classes. Class 4 consisted of unsecured claims. Included in that class were:

> Any and all contingent claims of creditors of Millard McAfee related to the personal guarantee of McAfee on debts of related entities. Specifically, this class includes, but is not limited to, the following unsecured contingent claims:
>
> 1. *First Security Bank of Utah*, relating to indebtednesses secured by the assets and paid from the operations of Golden Valley Packers, Inc., Golden Valley Feeders, Inc., and Salt Lake Bi–Products, Inc.: $8,225,299.36. See Plan at Page 10.

The Amended Plan provided that if the contingent debts were not paid by the primarily responsible party, then "any deficiency claim allowed and established" will be paid from the funds available from the sale of non-exempt property and funds generated by $15,000.00 per year. Neither the Amended Plan nor the Disclosure Statement described the non-exempt property nor specified for how many years the payments of $15,000.00 per year were to be made. These matters were clarified at the June 20, 1989 hearing. During that hearing the attorney for the Debtor stated:

> We have a very simple plan inasmuch as the settlement agreement with the RICO plaintiffs people calls for the Debtor to

liquidate all of its non-exempt assets being two matters, a note on a warehouse, secured by Deed of Trust, and by a coin collection. We intend to do that, posthaste. The—that would be liquidation analysis of that estate, the sale of those assets. We intend to supplement that so there would be a good faith effort to pay more than the liquidation of the estate by paying $15,000.00 a year for five years which would add $75,000.00 to the unsecured creditors' pool. (Tr. 124–25)

Article VII of the amended plan entitled "Discharge Provisions of the Plan" reads as follows:

> The provisions of this Plan call for the discharge of the Debtor of all indebtedness, the payment of which is not specifically treated and set forth under the Plan, upon the entry of the order confirming the Plan, and such order of confirmation shall discharge the Debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of Title 11, whether or not a proof of claim based on such debt has been filed or deemed filed under Section 501 of Title 11; such claim was allowed under Section 502 of the Title 11; or the holder of such claim has accepted the Plan.

The Debtor's schedules filed October 11, 1988 listed no creditors having priority, three creditors (including First Security) secured by assets of related entities, and three unsecured creditors. The file and the appearances noted at hearings reflect that all creditors save one took an active part in this case.[2]

### DISCUSSION

This case involves an apparent conflict between the broad discharge provisions of the plan and § 1141(d)(2) which provides: "The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under Section 523 of this title." Absent § 1141(d)(2), the dis-

---

**2.** The one creditor which did not actively participate was Western National Bank of Lubbock. At the June 20, 1989 hearing it was described by the Debtor's attorney as holding a contingent guarantee in the amount of $195,000.00.

charge provisions of the Amended Plan, clearly bar the claims asserted by First Security both in the Adversary Proceeding and in the United States District Court suit.

The resolution of this conflict is governed by *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987). In that case, Republic Supply Co.'s representative actively participated in the Chapter 11 proceedings of Command Energy Company. The plan proposed by Command provided that Dr. Shoaf's personal guaranty of Command's obligations would be released. At the hearing on the disclosure statement, Republic's representative, who was President of the Unsecured Creditors' Committee, questioned whether the release was appropriate. Neither Republic nor any other creditor filed an objection to confirmation of the plan. The plan was confirmed and no appeal was filed. Republic had previously filed suit against Dr. Shoaf on his personal guaranty. Following confirmation of Command's plan, Republic sought to move forward on its suit against Dr. Shoaf, pointing out that § 524(e) provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." The Fifth Circuit concluded that: "Republic's cause of action for enforcement of the guaranty is barred by the bankruptcy court's order confirming the Plan." *Id.* at 1054.

The file in this case reveals that First Security was an active participant in all phases of this case. First Security was represented at most, if not all, hearings in this case by able counsel. At the June 20, 1989 hearing First Security affirmatively voted for the Debtor's plan. First Security was one of the joint movants in the motion filed on August 4, 1989 requesting confirmation of the Debtor's plan.

First Security filed the Adversary Proceeding prior to the filing of the Debtor's first plan of reorganization. Thus, First Security was aware of these claims and aware of the broad discharge provisions of the Debtor's plan.

First Security took no appeal from the order confirming the Debtor's plan and that order is final. First Security's complaint under § 523 is barred by the confirmation of the Debtor's plan, just as Republic's cause of action for the enforcement of Dr. Shoaf's guaranty was barred by the confirmation of Command's plan.

The record in this case reveals substantial negotiation between the creditors and between the Debtor and the creditors over the amount of the claim of each creditor. The negotiations led to an agreement on a definite amount for First Security's claim. The other creditors had a right to rely on First Security's agreement as to the amount of its claim when they voted for the Debtor's plan. To allow First Security to proceed with its requested action would undoubtedly result in a heavy burden on the Debtor's time and a large cost to the Debtor. The time necessary to defend this claim would take the Debtor away from his business and make it more difficult for him to earn the income anticipated at the time of confirmation. At the very least the Debtor would be hampered, and perhaps totally prevented, from making the $15,-000.00 per year payments to the unsecured creditors called for under the Plan. If First Security were to secure a judgment against the Debtor, there would be further difficulty. The effect would be to deprive the unsecured creditors of payments which they had a right to anticipate when they voted for the plan. The creditors' reliance on the established amount of First Security's claim and the discharge of other claims contained in the plan is clear. First Security should not be allowed a "second bite at the apple" to the detriment of other creditors.

First Security cited two cases in support of its position. The first, *United States v. Gurwitch (In re Gurwitch),* 794 F.2d 584 (11th Cir.1986) involved a non-dischargeable claim held by the Internal Revenue Service. In that case Mr. Gurwitch acknowledged in his schedules that the Internal Revenue Service was seeking to collect from him as the major shareholder of two corporations withholding tax claims of $12,-000.00 and $21,000.00. The claim filed by the Internal Revenue Service was for

$7,756.41. Following confirmation, the Internal Revenue Service sought to collect the larger amounts from Mr. Gurwitch. The 11th Circuit said: "While IRS well could have been more diligent in pursuing its collection efforts, we cannot find legally justifiable Gurwitch's reliance on the IRS' proof of claim as signifying the total amount owed the government." *Id.* at 586. In *Gurwitch*, there was no showing that the IRS actively participated in Mr. Gurwitch's case nor that any creditor relied on the IRS' proof of claim. The IRS relied on § 523(a)(1), for which no complaint has to be filed in the Bankruptcy Court, whereas First Security is relying on § 523(a)(2) and (6) for which complaints do have to be filed in the Bankruptcy Court. For these reasons, this court finds that the *Gurwitch* rationale is not applicable in the present case.

First Security also cited *Goodnow v. Adelman (In re Adelman)*, 90 B.R. 1012 (Bankr.S.D.1988). Goodnow filed an adversary proceeding objecting to the dischargeability of his debt under § 523(a)(2)(A). Adelman's plan stated that Goodnow's unsecured claim was undisputed but that no dividend would be paid on the claim. Goodnow received the plan, disclosure statement and a ballot. He did not vote for or against confirmation or participate in the confirmation process. The court held that Goodnow could pursue his non-dischargeable claim post-confirmation. Although this court is not sure that it would reach the same conclusion on the facts described in the opinion, there are a number of factors which distinguish *Adelman* from the present case. The opinion does not describe the discharge provisions of the plan, so perhaps they were not as broad as those contained in this Debtor's plan. There is no evidence that Mr. Adelman or any of his creditors relied on Goodnow's lack of activity in the case. Also, the bankruptcy court was unable to hear the Adversary Proceeding prior to confirmation. The court said:

> The adversary proceeding was pending when Adelman's plan was confirmed.

Due to this Court's scheduling nightmare in 1987, it was impossible to determine the non-dischargeability matter before confirmation of the plan. Therefore, the special treatment of non-dischargeable debts should apply to those debts determined to be non-dischargeable after confirmation of the plan. *Id.* at 1018.

Further, while the South Dakota bankruptcy court was not obligated to follow the Fifth Circuit's ruling in *Shoaf*, this court must do so. Indeed, *Shoaf* is not cited in *Adelman* at all.

The provisions of a confirmed plan bind the creditors:

> ... upon confirmation of a Chapter 11 plan of reorganization, those parties who voted in favor of the plan and did not file objections or an appeal are bound by the terms of the Chapter 11 plan.... By failing to file an objection to the Plan, by casting a ballot accepting the Plan, and by not attacking the confirmation order by appeal, the Bank has waived any right to object to either the jurisdiction of the Bankruptcy Court or the provisions set forth in the Plan. *Burner v. Security State Bank (In re Burner)*, 109 B.R. 216, 222 (Bankr.W.D.Tex.1989).

*See also Miami Center Limited Partnership v. Bank of New York*, 838 F.2d 1547 (11th Cir.), *cert. denied*, 488 U.S. 823, 109 S.Ct. 69, 102 L.Ed.2d 46 (1988).

### Conclusion

For the reasons stated, the motion to be relieved from the Automatic Stay will be denied and the related Adversary Proceeding will be dismissed.

ORDER ACCORDINGLY.[3]

---

**3.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.