In re **NORTH ALABAMA ANESTHE-SIOLOGY GROUP, P.C., Debtor.**

**NORTH ALABAMA ANESTHESIOLOGY GROUP, P.C., James N. Jeter and Thomas F. Shultz, Plaintiffs–Appellees,**

v.

**James B. ZICKLER, Defendant–Appellant.**

**Bankruptcy No. 88–8456.
No. CV93–PT–252–NE.**

United States District Court,
N.D.Alabama,
Northeastern Division.

April 14, 1993.

John M. Heacock, Jr., Lanier Ford Shaver & Payne, Huntsville, AL, for appellant.

Michael Fraser Ford, Munsey Ford & Heflin, Tuscumbia, AL, Jerry W. Schoel, Melinda M. Dionne and Paul Avron, Schoel Ogle Benton & Centeno, Birmingham, AL, for appellees and debtor.

## MEMORANDUM OPINION

PROPST, District Judge.

This is an appeal, pursuant to 28 U.S.C. § 158(a), from the judgment and decision of the United States Bankruptcy Court for the Northern District of Alabama (Case No. 88–8456, Chapter 11).

## STATEMENT OF FACTS and PROCEDURAL HISTORY

North Alabama Anesthesiology Group, P.C. (NAAG) filed a Chapter 11 petition in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division, on September 2, 1988. Defendant-appellant (hereinafter Zickler) was listed as a creditor in NAAG's bankruptcy petition and on the mailing matrix filed with the clerk of the bankruptcy court.[1]

On June 30, 1987, Zickler entered into a consulting and non-compete agreement with NAAG. Zickler had not been previously associated with NAAG. This agreement provided that NAAG would pay Zickler $215,000 in 60 monthly installments of $3,583.33. The agreement provided that Zickler would provide consultation advice to NAAG and that he would not compete with NAAG for five years.[2] NAAG's obligations under the agreement were personally guaranteed by the non-debtor plaintiffs-appellees, James N. Jeter and Thomas F. Shultz (hereinafter Jeter and Shultz).

After NAAG filed its Chapter 11 petition, it filed an application to reject its agreement with Zickler. The bankruptcy court's mailing records indicate that a copy of NAAG's application was sent to Zickler at the address indicated on the mailing matrix. On September 29, 1988, a hearing was held in Florence, Alabama on NAAG's application to reject the agreement. Zickler and his attorney, Conrad Pitts, appeared at the hearing in Florence, Alabama. On October 13, 1988, Zickler filed a document with the bankruptcy court in which he stated that he would not contest NAAG's application to reject its agreement with him.[3]

On April 10, 1989, NAAG filed its Plan and Disclosure Statement (reorganization plan). On May 15, 1989, the bankruptcy court set the date for the confirmation hearing. On July 13, 1989, the bankruptcy court confirmed NAAG's proposed plan of reorganization.[4] The bankruptcy court's

---

1. Zickler's address was listed on the bankruptcy court's mailing matrix as Rt. 6, Box 172, Killen, Alabama 35645. Zickler filed an affidavit stating that prior to the filing of NAAG's bankruptcy petition he had moved to Florida. Apparently the debtor listed Zickler's Alabama address even though it was known that he had moved to Florida. Zickler stated that, upon information and belief, he had not received notice of the hearing on the confirmation of NAAG's proposed reorganization plan. The Clerk of the bankruptcy court's mailing records indicate that notice of the confirmation hearing was mailed to all creditors listed on the mailing matrix. The bankruptcy court in its December 10, 1992 order made a factual finding that Zickler had notice of the proposed reorganization plan and order of confirmation but failed to object to the proposed plan or appeal the bankruptcy court's confirmation order.

2. This agreement was also guaranteed by Emanuel Eugene Turner (Turner) who is not a party to this litigation. The agreement was actually a medical practice sales-purchase agreement designed to give tax advantages to the purchaser(s). See full discussion of facts in *Zickler v. Shultz*, 603 So.2d 916, 917–918 and 920–921 (Ala.1992).

3. The document (styled "Motion") filed by Zickler prior to the confirmation order did not contain an address except for that of Pitts. Apparently, no motion was mailed to Pitts.

4. Article XI of NAAG's reorganization plan is at issue in this case. Article XI provides:

   ... The rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all claims of any nature whatsoever, including any interest accrued thereon from and after the filing date, against the Debtor or the Debtor in possession and, any of its assets or properties and against Thomas F. Shultz and James N. Jeter, and, except as expressly provided otherwise herein, on the confirmation date, all such claims

mailing records indicate that notice of all the above hearings were sent to all listed creditors.

On March 3, 1989, prior, of course, to the filing of NAAG's proposed plan, Zickler filed suit in Alabama state court against NAAG, Jeter, Shultz and Turner for breach of the agreement. Jeter, Shultz and Turner, in their August 7, 1989 answer, stated that the bankruptcy court's order confirming the reorganization plan released and discharged them from all personal obligations, including their guaranties.[5] On March 15, 1991, the Circuit Court of Lauderdale County, Alabama granted Jeter's, Shultz's, and Turner's motion for summary judgment. The Alabama Supreme Court in *Zickler v. Shultz*, 603 So.2d 916, *reh'g denied*, (Ala.1992), held that the bankruptcy court's confirmation order did not bar Zickler's state court action against Jeter and Shultz under the doctrine of res judicata and reversed the trial court's judgment.

On September 29, 1992, almost two months after the Alabama Supreme Court denied an application for rehearing, NAAG, Jeter and Shultz filed a complaint in the bankruptcy court seeking to enjoin the state court action. On October 29, 1992, Zickler filed a Motion for Summary Judgment or Dismissal of Complaint, and a Motion for Abstention, under 28 U.S.C. § 1334(c)(1), asking the bankruptcy court to abstain from hearing NAAG's, Jeter's and Shultz's complaint seeking to enjoin Zickler's state court action.[6]

On November 6, 1992, NAAG, Jeter and Shultz filed a Motion for Summary Judgment on their Complaint for Injunctive Relief based upon the bankruptcy court's order confirming NAAG's Chapter 11 plan. On November 19, 1992, a hearing was held in Florence, Alabama on NAAG's, Jeter's and Shultz's Motion for Summary Judgment. On December 10, 1992, the bankruptcy court granted NAAG's, Jeter's and Shultz's Motion for Summary Judgment and enjoined Zickler from prosecuting the state court action.[7] Zickler filed a Notice of Appeal to this court on December 17, 1992.

## CONTENTIONS OF THE PARTIES

■ On appeal, Zickler contends that the Bankruptcy Court erred when it entered its summary judgment order on December 12, 1992. This order *permanently* enjoined Zickler from pursuing the state court civil action against Jeter and Shultz.[8] Zickler

---

**5.** *See* "Sixth Defense." There is no evidence that, after the state court defendants answered, Zickler sought any direct relief from the bankruptcy court. Neither is there any evidence that the defendants sought an order or injunction from the bankruptcy court prior to an Alabama Supreme Court decision.

**6.** Zickler never filed an answer in response to plaintiff's complaint for injunctive relief. On November 17, 1992, Zickler filed a response to plaintiff's motion for summary judgment. The bankruptcy court never ruled on Zickler's Motion for Abstention.

**7.** The bankruptcy court did not discuss abstention.

**8.** The Anti–Injunction Act, 28 U.S.C. § 2283, precludes a Court of the United States from granting an injunction to stay proceedings in state court. There are, however, exceptions to the Anti–Injunction Act. The Act specifically provides that a Court of the United States "... [may enjoin a state proceeding if] expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment." In *Amwest Mortg. Corp. v. Gra-*

---

against the Debtor, the Debtor's assets or properties, Thomas F. Shultz and James N. Jeter, any other or further claims based upon any act or omission, transaction or any kind or nature that occurred prior to the confirmation are satisfied, discharged and released. Since the debtor had rejected the agreement with Zickler, it is not clear what "rights" Zickler was "afforded." In *Republic Supply Co., Inc. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987), hereinafter discussed, the plan provided that Republic was to receive forty cents on the dollar. *Id.* at 1048–49. Zickler apparently held the largest unsecured claim. There is no evidence that Zickler was paid anything pursuant to the plan. In fact, NAAG's reorganization plan clearly provided that creditors whose executory contracts had been rejected were to receive nothing. This court is not aware of any case in which a non-debtor has been totally absolved of all liability without any benefit at all inuring to the affected creditor. In their state court action the defendants filed a counterclaim against Zickler based on the same transaction. Apparently the plan did not eliminate those claims. Bankruptcy courts follow equitable principles. The "equity" of that result might be questioned. This might be an appropriate reason for abstention, in the interest of justice, under 28 U.S.C. § 1334(c)(1).

claims that the bankruptcy court record contains ample evidence that he did not receive notice of the confirmation hearing on NAAG's reorganization plan. Zickler argues that since he did not receive notice of the hearing, the order confirming the plan was invalid insofar as it purported to release Zickler's rights against Shultz and Jeter.[9]

Zickler further contends that the bankruptcy court did not have subject matter jurisdiction to release Jeter and Shultz as guarantors. Zickler argues that the bankruptcy court's jurisdiction does not extend to property outside the estate, especially that of non-debtors such as Jeter and Shultz. Zickler further contends that the issue of subject matter jurisdiction should have been considered initially (sua sponte) by the bankruptcy court before it enjoined the action in state court. Zickler asserts that the bankruptcy court did not have subject matter jurisdiction to issue an injunction against him; consequently, the present state court action should proceed.

Jeter and Shultz contend, however, that a creditor such as Zickler may not collaterally attack provisions in a confirmed Chapter 11 plan of reorganization because an order confirming a reorganization plan is entitled to res judicata effect.

## ANALYSIS

When reviewing findings of fact by the bankruptcy court, under Bankruptcy Rule 8013, a district court may reject those findings only if they are clearly erroneous. The advisory notes to Rule 8013 state that the findings of a bankruptcy judge are to be given the same weight as the findings of a district judge under Rule 52 of the Federal Rules of Civil Procedure. Using Rule 52 as a lodestar, this court can reject the bankruptcy court's findings of fact only if, after viewing all of the evidence, the court "... is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Questions of law, however, are subject to review de novo. *In re Holywell Corp.*, 913 F.2d 873, 879 (11th Cir.1990); *Richmond Leasing Co. v. Capital Bank N.A.*, 762 F.2d 1303, 1307 (5th Cir.1985).

## FINDINGS OF FACT

This court will address the bankruptcy court's ultimate factual conclusion that Zickler received sufficient notice of the contents of the reorganization plan and the order confirming the plan.[10] The bankruptcy court made the following findings of fact: (1) Zickler was listed as a creditor both on the debtor's petition and on the bankruptcy court's mailing matrix; (2) Zickler's address was the same as that which was listed in the agreement executed between him and the debtor; (3) no mail was returned to the bankruptcy court, which indicated Zickler was no longer receiving his mail at the listed address; (4) Zickler had moved to Florida, but he was still receiving mail at the address listed in the debtor's petition; (5) Zickler had participated in the debtor's bankruptcy proceeding by attending hearings and filing documents with the court; and (6) Zickler had

---

*dy*, 925 F.2d 1162, 1164 (9th Cir.1991), the court interpreted the Anti–Injunction Act to allow federal courts to protect the res judicata effect of its judgments. Under 11 U.S.C. § 105(a), a bankruptcy court may issue any order necessary to carry out and/or implement court orders or rules. *In re Joint Eastern & Southern Dist. Asbestos Litigation*, 120 B.R. 648, 658 (Bankr. E.D.N.Y.1990) (court reasoned that 11 U.S.C. 105(a) would fall within exception to Anti–Injunction Act). *See also A.H. Robbins Co. v. Piccinin*, 788 F.2d 994, 1008 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986) (bankruptcy court can enjoin state court proceeding to protect and enforce its own

decrees and forbid " ... a state court to review and alter the terms of the bankruptcy decree.").

**9.** The court agrees that, if Zickler did not receive notice, the plan could have no effect on his claims against Jeter and Shultz. His only basis for asserting lack of notice is his own "information and belief" affidavit.

**10.** On March 30, 1993, this court issued an order that on or before April 12, 1993, the parties were to file suggestions of any facts pertinent to this cause as to which there should be a remand to the bankruptcy court for determination. Neither party filed any suggestions.

been represented by competent legal counsel.

Zickler argues that his affidavit filed on November 9, 1992, is "ample evidence" of the fact that he did not receive any notification of the confirmation hearing in NAAG's case. Furthermore, Zickler cites *In re Spring Valley Farms, Inc.*, 863 F.2d 832 (11th Cir.1989) for the proposition that failure to give notice of a hearing by the bankruptcy court constitutes a violation of a creditor's constitutional rights if rights of the creditor are affected by the hearing and subsequent order(s). This court notes that according to the bankruptcy court's mailing records, notice was mailed to Zickler at his Alabama address and not returned, whereas the creditors in *In re Spring Valley Farms, Inc.* were never mailed notice of the bar date for filing a claim. *Id.* at 834. *Cf. Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629 (11th Cir.1988).

This court need not decide whether Zickler received actual notice of the hearing regarding NAAG's reorganization plan. For further consideration, however, the court will assume proper notice.

## QUESTIONS OF LAW [11]

### SUBJECT MATTER JURISDICTION

This court must now examine whether the bankruptcy court's unappealed order confirming NAAG's reorganization plan, which by its express terms released Jeter and Shultz as guarantors, was entitled, under any circumstances, to res judicata effect as to these non-debtors. The court must address Zickler's claim that the bankruptcy court had no subject matter jurisdiction to release Jeter and Shultz as guarantors.

■ Zickler argues that *In re Gallucci*, 931 F.2d 738 (11th Cir.1991), is dispositive of the present appeal. In *In re Gallucci* the Eleventh Circuit addressed whether a Chapter 7 trustee could proceed against the debtor's mother's home, which the trustee claimed as part of the bankruptcy estate. *Id.* at 740. The Eleventh Circuit found that the home was not part of the estate and hence no subject matter jurisdiction existed to proceed against the home. *Id.* at 741. The *Gallucci* court reasoned that the trustee's suit was a "non-core" action that was not related to the debtor's case. *Id.* at 742–743. Zickler argues that *Gallucci* stands for the proposition that if the action does not involve property of the estate, it is an unrelated matter, and completely beyond the bankruptcy's court subject matter jurisdiction. Zickler further asserts that the issue of subject matter jurisdiction should have been considered by the bankruptcy court before it issued its injunction. Zickler also argues that 11 U.S.C. § 524(e) negates the power of the bankruptcy court to discharge debts of non-debtors.[12]

The instant case is distinguishable from *Gallucci*. 11 U.S.C. § 524(e) states that a bankruptcy court's order discharging or altering the underlying debt does not affect the liability of any other entity for such debt. Section 524, however, does not provide a straightforward answer to the question presented here, since res judicata was the sole basis of the bankruptcy court's December 12, 1992 order. Also, the confirmation of the reorganization plan here constituted a "core" proceeding; whereas in *Gallucci* the trustee's suit was deemed

11. The court will first consider what the situation would have been if there had been no final state court judgment and no decision by the Alabama Supreme Court prior to the order of the bankruptcy court which is the subject of this appeal.

12. Zickler argues that the Ninth and Tenth Circuits have held that a bankruptcy court does not have the equitable power to permanently enjoin an action in state court against a non-debtor. *See In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 600–602 (10th Cir.), *modified, Abel v. West*, 932 F.2d 898 (10th Cir.1991) and *In re*

*American Hardwoods, Inc.*, 885 F.2d 621 (9th Cir.1989). Zickler also cites *R.I.D.C. Industrial Development Fund v. Snyder*, 539 F.2d 487 (5th Cir.1976), *cert denied*, 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542 (1977) for the proposition that a bankruptcy court's order discharging the underlying debt does not release the guarantor. These cases, however, do not discuss whether a bankruptcy court's unappealed order confirming a reorganization plan which releases non-debtor guarantors is entitled to res judicata effect.

"non-core".[13]

■ The court also rejects Zickler's contention that the bankruptcy court's order enjoining the state court action should be reversed because the bankruptcy court did not first determine independently whether it had subject matter jurisdiction over Zickler's claim against the guarantors. While it is generally true that a bankruptcy court is precluded from releasing non-debtor guarantors, there is no specific provision in the Bankruptcy Code that precludes the release of a guarantor when such release has been accepted and confirmed as an integral part of an unobjected to reorganization plan. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir.1987). A creditor like Zickler, assuming proper notice, cannot, after the fact, object to a provision in a reorganization plan that has been confirmed by the bankruptcy court without objection thereto and not appealed therefrom. *Id.* In *Shoaf, supra*, the court stated that "[the creditor] is now seeking to appeal the confirmed plan.... [This appeal] is now foreclosed because [the creditor] chose not to pursue ..." a direct appeal of the confirmed plan. *Id.* at 1050.

## RES JUDICATA

The court will now address whether the bankruptcy court's order [14] releasing Jeter and Shultz as guarantors would, under any circumstances, be entitled to res judicata effect. The Fifth Circuit's decision in *Shoaf, supra*, addressed the res judicata effect of a bankruptcy court's final and unappealed order confirming a plan of reorganization.[15] The *Shoaf* court also considered whether a bankruptcy court has subject matter jurisdiction to discharge a guarantor.[16] The court denied enforcement of a guaranty on res judicata grounds. The court held that the creditor had the opportunity to appeal the bankruptcy court's confirmation of the reorganization plan on the ground that the release of the guarantor exceeded the subject matter jurisdiction of the bankruptcy court. *Id.* at 1053. The *Shoaf* decision is instructive on the issue of res judicata.[17]

In *Manning v. City of Auburn*, 953 F.2d 1355, 1358 (11th Cir.1992), the Eleventh Circuit set forth the four elements necessary for a res judicata bar: "(1) a final judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of parties, and (4) with the same cause of action presented in both suits." *See also Richardson v. Alabama State Bd. of Educ.*, 935 F.2d 1240, 1244 (11th Cir.1991); *Dairyland Ins. Co. v. Jackson*, 566 So.2d 723, 725 (Ala.1990).

■ This court, as did the court in *Shoaf*, will address each of the elements separately.

---

**13.** In 28 U.S.C. § 157(b)(2)(L) (Supp.1992) Congress provided that the confirmation of a Chapter 11 plan is a "core" proceeding. *See I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1548 (11th Cir.1986) ("core" proceeding entitled to res judicata effect).

**14.** The bankruptcy court's December 10, 1992 order was based solely on res judicata and was contrary to the prior Alabama Supreme Court ruling. The bankruptcy court's order did not mention 11 U.S.C. § 105.

**15.** *See also In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir.), *cert. denied*, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990) (bankruptcy court's order confirming a reorganization plan entitled to res judicata effect); *In re Pavlovich*, 952 F.2d 114 (5th Cir.1992) (bankruptcy court's order confirming a Chapter 11 reorganization plan is entitled to res judicata effect); *In re McAfee*, 120 B.R. 76, 80 (Bankr.N.D.Tex.1990) (creditor waived right to object to jurisdiction of bankruptcy court by failing to object and/or appeal the confirmation of the reorganization plan); *Federal Deposit Ins. Corp. v. O'Donnell*, 136 B.R. 585 (D.D.C.1991) (chapter 11 reorganization which released a guarantor entitled to res judicata effect).

**16.** Here, the bankruptcy court concluded that Zickler had received notice of proposed reorganization plan and confirmation order, but failed to object or appeal.

**17.** In *Union Carbide Corp. v. Newboles*, 686 F.2d 593 (7th Cir.1982), the court held that although the creditor had approved a reorganization plan that provided for the release of a guarantor, it could nevertheless enforce the guaranty because the bankruptcy court was without power to release a guarantor and that an order confirming the plan was, to that extent, of no effect. *Shoaf* disavows a conflict in these holdings since *res judicata* was the sole basis for the *Shoaf* holding. *Shoaf*, 815 F.2d at 1051, n. 6.

## IDENTITY OF THE PARTIES

Zickler participated in a hearing held before the bankruptcy court in Florence, Alabama on September 29, 1988. On October 13, 1988, he filed a document in the bankruptcy court which stated that he would not contest NAAG's application to reject its agreement with him. Zickler, if notified, also had an opportunity to object to and/or appeal the bankruptcy court's order confirming NAAG's reorganization plan. On April 10, 1989, the bankruptcy court mailed an order that set a hearing to set a date for the acceptance or the rejection of NAAG's plan and to fix a date for hearing on confirmation. On May 15, 1989, the bankruptcy court mailed an order that established the last day for filing written acceptances or rejections of NAAG's plan. Both orders were mailed to Zickler's Alabama address. The attorney [18] representing NAAG in the bankruptcy court also was the attorney for Jeter and Shultz. This attorney petitioned the bankruptcy court to allow NAAG to employ Jeter and Shultz as physicians since they provided NAAG with all of its income.[19]

## PRIOR JUDGMENT BY A COURT OF COMPETENT JURISDICTION

Zickler argues that the bankruptcy court did not have subject matter jurisdiction to release Jeter and Shultz as guarantors and, consequently, the bankruptcy court's order confirming the reorganization plan is not the "judgment of a court of competent jurisdiction".[20] In *Shoaf,* the Fifth Circuit specifically addressed whether a bankruptcy court's order releasing a guarantor constituted a "prior judgment of a court of competent jurisdiction." The court concluded that, for the purposes of res judicata, the bankruptcy court's order adopting the reorganization plan releasing a guarantor was rendered by a "court of competent jurisdiction". *Id.* at 1053.

In reaching its result, the *Shoaf* court addressed a number of issues that are similar and pertinent to the instant case.[21] The

> [w]hen an erroneous judgment, whether from the court of first instance or from the court of final resort, is pleaded in another court or another jurisdiction the question is whether the former judgment is *res judicata.* After a federal court has decided the question of jurisdiction over the parties as a contested issue, the court in which the plea of *res judicata* is made has not the power to inquire again into that jurisdictional fact. We see no reason why a court, in the absence of an allegation of fraud in obtaining the judgment should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation. In this case the order upon the petition to vacate the confirmation settled the contest over jurisdiction.

> . . . . .

> After a party has his day in court, with the opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first.

> . . . . .

> That a former judgment in a state court is conclusive between the parties and their privies in a federal court when entered upon an actually contested issue as to the jurisdiction of the court over the subject matter of the

18. Michael F. Ford, in documents filed in the bankruptcy court, indicated that he was the attorney for NAAG, Jeter and Shultz. Ford filed NAAG's reorganization plan in the bankruptcy court on April 7, 1989.

19. Jeter and Shultz were, of course, referenced in the plan as confirmed. While it is arguable that Jeter and Shultz were "parties" to the initial bankruptcy court proceedings, for reasons stated hereinafter it is not necessary that the court reach an ultimate conclusion in this regard.

20. Zickler asserts that 11 U.S.C. § 524(e) prohibits the release of a guaranty of a non-debtor. This court has previously concluded that neither § 524 nor the cases cited by Zickler specifically address the res judicata effect of a bankruptcy court's order that releases a guarantor(s).

21. The *Shoaf* court relied upon *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940) and *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938) in determining that the bankruptcy court's order releasing the guaranty was issued by a "court of competent jurisdiction." In *Stoll* the Supreme Court of Illinois, considering an appeal from a state court judgment, rejected a res judicata defense based on a bankruptcy court's confirmed reorganization plan. Rather than return to the bankruptcy court, the sued guarantor petitioned for and received a writ of certiorari from the Supreme Court of the United States. The Court stated:

court first addressed whether the bankruptcy court could issue an order releasing a guarantor when the question of jurisdiction was neither " 'determined [nor] raised' " by the bankruptcy judge. *Id.* at 1052. The *Shoaf* court, citing *Stoll,* reasoned that a bankruptcy court, in rendering a judgment, either tacitly or expressly determines its own jurisdiction. *Id.* Consequently, in rendering its order releasing the guarantor in *Shoaf,* the bankruptcy court determined that it had jurisdiction to release the guarantors. *Id.*

In considering whether the bankruptcy court could issue an order without first determining its jurisdiction, the Fifth Circuit addressed whether the jurisdictional issue had to be contested and decided by the bankruptcy court. The *Shoaf* court stated that "... cases have made clear that the parties need only have had the opportunity to raise the question of jurisdiction ...' [i]f the general principles governing the defense of res judicata are applicable, ... [parties] ... having the opportunity to raise the question of [jurisdiction], were not the less bound by the [bankruptcy] decree because they failed to raise [or object to] it.' " *Id.* at 1053.

The *Shoaf* court concluded that a bankruptcy court does not have to specifically determine that it has subject matter jurisdiction in order to render a judgment. In essence, the *Shoaf* court reasoned that parties to a bankruptcy proceeding need only have the opportunity to raise the jurisdictional question.[22] Therefore, a bankruptcy court's authority arguably extends, for purposes of res judicata consideration, beyond the bankruptcy estate so long as the parties to the bankruptcy proceeding have the opportunity to raise the question of jurisdiction.[23] Based on the foregoing analysis, this court concludes that the bankruptcy court, in confirming NAAG's reorganization plan, determined that it had subject matter jurisdiction. Furthermore, Zickler had the opportunity to object to the reorganization plan and did not appeal the bankruptcy court's decision confirming NAAG's reorganization plan. Consequently, this court concludes that the bankruptcy court's order confirming NAAG's reorganization plan constituted a "final judgment by a court of competent jurisdiction" for res judicata purposes.[24]

## FINAL JUDGMENT ON THE MERITS

The Eleventh Circuit in *In re Justice Oaks, II Ltd.,* 898 F.2d 1544, 1550

litigation, has been determined by this Court in *Forsyth v. Hammond,* [166 U.S. 506, 17 S.Ct. 665, 41 L.Ed. 1095 (1897)].
*Id.* at 172–173, 59 S.Ct. at 137–138. (footnotes omitted).
Here, unlike in *Stoll,* there was no petition for certiorari to the U.S. Supreme Court. *Stoll* refers to a "contested issue." Other than *sub silentio,* there was no contested issue in the bankruptcy court in this case. In *Stoll,* the creditor had moved the bankruptcy court to modify the plan. The petition was denied and there was no appeal. Here, there was no such action taken by the Zickler in the bankruptcy court. In *Shoaf, supra* "[t]he question of the authority of the bankruptcy judge to act was clearly placed before the bankruptcy court" by the creditor's counsel. *Shoaf,* 815 F.2d at 1052. The creditors in both *Shoaf* and *Stoll* were likely more knowledgeable than Zickler was. There is a suggestion in the above quoted language from *Stoll* that the Alabama Supreme Court having first decided the issue of whether the bankruptcy court's order confirming the plan was entitled to res judicata effect, its judgment is conclusive.

**22.** Zickler argues that since he did not litigate the question of the bankruptcy court's jurisdic-

tion, the bankruptcy court was not a court of competent jurisdiction.

**23.** The Fifth Circuit in *Shoaf* reasoned that, based on *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), "... in the case of a bankruptcy court's exceeding its statutory authority by releasing a guarantor of a debtor, the interest in finality surpasses any threat that courts will engage in drastic overreaching." *Id.* at 1054 n. 9. The same argument can be made with reference to the Supreme Court of Alabama decision.

**24.** In *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 375, 60 S.Ct. 317, 319, 84 L.Ed. 329 (1940), the Court held that res judicata applied because the parties failed to raise the constitutional claim in the first federal statutory proceeding even though the statute giving subject matter jurisdiction to the court was ruled unconstitutional. *See Stevenson v. Int'l Paper Co.,* 516 F.2d 103, 109 (5th Cir.1975) (res judicata rests on a rule of public policy designed to put an end to contentious litigation).

(11th Cir.), *cert. denied* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990), concluded that "... a bankruptcy court's order confirming a plan of reorganization is given the same effect as any district court's final judgment on the merits." Similarly, in *Miller v. Meinhard–Commercial Corp.*, 462 F.2d 358, 360 (5th Cir.1972), the court stated that a reorganization plan "... confirmed by a bankruptcy court has the effect of a judgment rendered by the district court." Furthermore, in *Shoaf, supra,* the court concluded that "... the bankruptcy court, applying bankruptcy law, confirmed the Plan and disposed of [the guarantor's] liability in an order that was final and appealable. It was therefore a final judgment on the merits." *Id.* at 1053. As in *Shoaf,* the bankruptcy court here confirmed NAAG's reorganization plan and disposed of Jeter's and Shultz's liability in an order that was final and appealable. Consequently, the bankruptcy court's order was a final judgment on the merits.

## THE SAME CAUSE OF ACTION

▇ In *Manning, supra,* the Eleventh Circuit stated the standard for determining whether the causes of action in two proceedings are the same. In *Manning,* the court stated that "[r]es judicata applies 'not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of facts.'" *Manning,* 953 F.2d at 1358. In the instant case, Zickler's suit in state court seeks to enforce guarantees which were released by the bankruptcy court when it confirmed NAAG's reorganization plan. Zickler's claim against Jeter and Shultz in state court relates to the identical matter addressed in the bankruptcy court's order confirming the reorganization plan. By definition, Zickler's state court action arises out of the same common nucleus of operative facts that was the subject of the bankruptcy court's order. Consequently, Zickler's cause of action in state court is the same "cause of action" presented in the bankruptcy court.

The court concludes that under *Manning, supra,* all four elements of res judicata are satisfied and the bankruptcy court's order releasing Jeter and Shultz as guarantors was of the type which is entitled to res judicata effect. Zickler had the opportunity to object and/or appeal the bankruptcy court's order confirming NAAG's reorganization plan, which by its express terms released Jeter and Shultz as guarantors. Zickler, however, remained silent and now challenged, by seeking to enforce the guaranty against Jeter and Zickler in state court, the bankruptcy court's confirmation of NAAG's reorganization plan.[25] While the plan confirmation order may have, at some stage, been entitled to res judicata effect, it is not so clear that Jeter and Shultz met their burden necessary to obtain an injunction. In any event, it is necessary that the court address the effect of the decision of the Alabama Supreme Court.

## EFFECT OF STATE COURT JUDGMENT AND SUPREME COURT OF ALABAMA DECISION

In *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986), Parsons Steel first sued First Alabama Bank in an Alabama state court. Subsequently, Parsons sued First Alabama Bank in a federal district court, alleging a federal claim against the bank based on the same conduct that was the subject of the state suit. The federal action went to trial before the state action, the district court granted a judgment notwithstanding the verdict for the bank, and the Eleventh Circuit affirmed.

First Alabama pleaded a res judicata defense in the state action based on the federal judgment, but the Alabama court denied the defense and allowed Parsons to amend its complaint. The state court jury returned a verdict for Parsons. First Alabama returned to the federal district court and petitioned for an injunction against Parsons, contending that the state actions

**25.** As indicated, in all of the foregoing discussion, the court assumes without deciding that Zickler received adequate notice of the plan confirmation hearing(s).

should have been pursued in the federal action as pendent claims. First Alabama argued that the federal judgment barred the state claims under the doctrine of res judicata. The district court enjoined Parsons, and the Eleventh Circuit affirmed.

The Supreme Court of the United States reversed and remanded the Eleventh Circuit's affirmance of the district court's order which enjoined further prosecution of the state court case on res judicata grounds. The Court reasoned that the Eleventh Circuit erred when it refused to consider the possible preclusive effect, under Alabama law, of the state court's rejection of a res judicata claim based on a prior federal judgment. The Supreme Court concluded that the relitigation exception to the Anti–Injunction Act was not applicable when "... the state court has finally rejected a claim of res judicata, ... the Full Faith and Credit Act becomes applicable and federal courts must turn to state law to determine the preclusive effect of the state court's decision". *Id.* at 524, 106 S.Ct. at 772. The Court further stated that "[c]hallenges to the correctness of a state court's determination as to the conclusive effect of a federal judgment must be pursued by way of appeal through the state court system and certiorari from this Court." *Id.* at 525, 106 S.Ct. at 772–773.[26]

■ The Eleventh Circuit remanded the case to district court to be considered in conformity with the Supreme Court's opinion. The district court found that Alabama law did not give preclusive effect to the state court's determination of the res judicata issue because there had not been a

final judgment. *Id.*[27] The Eleventh Circuit, based upon the Supreme Court's analysis, reasoned that the district court was in the best position to determine Alabama preclusion law and to decide if an injunction was appropriate. *First Alabama Bank v. Parsons Steel, Inc.,* 825 F.2d 1475, 1479–1480 (11th Cir.1987).

The district court reasoned that the preclusive effect of the federal action was raised in the state court through motions to dismiss, motions for summary judgment and motions for directed verdict. *Id.* at 1480. The district court concluded that Alabama equated finality for purposes of preclusion with appealability. *Id.* Consequently, the district court found that the Alabama state court's rulings on these motions were not final judgments entitled to preclusive effect under Alabama law because the issues were still pending before the state court in connection with a motion for judgment notwithstanding the verdict or for a new trial at the time the district court issued its injunction. *Id.* Therefore, the injunction against the state court action remained in effect because there was no final appealable judgment at the time of the injunction.

■ In *Zickler v. Shultz,* 603 So.2d 916 (Ala.1992), the Alabama Supreme Court determined that the bankruptcy court's judgment confirming NAAG's reorganization plan did not bar claims against guarantors Jeter and Shultz under the doctrine of res judicata. *Parsons* holds that the bankruptcy court is bound by the Alabama Supreme Court's res judicata determination. In *Parsons,*[28] the Court explicitly stated that:

**26.** *Cf. Stoll, supra.*

**27.** In Alabama, res judicata does not apply until there is a final judgment rendered on the merits of the case. *Food Service Distributors, Inc. v. Barber,* 429 So.2d 1025, 1027 (Ala.1983). *Shoaf* states, "[A] final judgment for purposes of res judicata must finally dispose of some matter which under the substantive law to be applied and the procedural law of the forum can be, and has been finally disposed of." *Id.* at 1053. (citations omitted). The state court judgment involving the parties here was final and appealable. The first time that the issue of res judicata was addressed and decided was in the Alabama court proceedings. Many of the same

principles enunciated in *Shoaf* and *Stoll* with regard to res judicata apply to the decision of the Alabama Supreme Court's *Zickler* decision.

**28.** On remand, the district court's injunction remained in effect because the district court found that res judicata did not apply until there had been a final judgment rendered on the merits. The Eleventh Circuit stated that "[a] district court has discretion to determine whether federal interference with state proceedings is warranted pursuant to the relitigation exception to the Anti–Injunction Act, and, within that discretion, a district court in a given case may go either way and not be reversed." *Parsons Steel, Inc.,* 825 F.2d at 1486. To the extent that this

the Anti–Injunction Act and the Full Faith and Credit Act can be construed consistently, simply by limiting the relitigation exception of the Anti–Injunction Act to those situations in which the state court has not yet ruled on the merits of the res judicata issue. Once the state court has finally rejected a claim of res judicata, then the Full Faith and Credit Act becomes applicable and federal courts must turn to state law to determine the preclusive effect of the state court's decision.

*Parsons Steel, Inc.,* 474 U.S. at 524, 106 S.Ct. at 772.

Since the Alabama Supreme Court determined the res judicata issue, the bankruptcy court had to give "the state court's resolution of [that] issue, the same preclusive effect it would have had in another court of the same State." *Id.* at 525, 106 S.Ct. at 772. Conversely, if the bankruptcy court had first decided the res judicata issue, then, arguably, the Alabama Supreme Court would have been bound by its decision.

■ The *Parsons* decision, since this is a bankruptcy appeal, should be read in conjunction with 11 U.S.C. § 105(a).[29] Under 11 U.S.C. § 105(a), a bankruptcy court may issue any order necessary to carry out and/or implement court orders or rules.[30] This section provides a source of authority for a bankruptcy court to enjoin a state court action to protect its decrees. *See A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1008 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986) (bankruptcy court can enjoin state action to protect its decrees); *In re Joint Eastern & Southern Dist. Asbestos Litigation,* 120 B.R. 648, 658 (E.D.N.Y.1990) (court rea-

court's discretion is involved, it will exercise it in favor of the appellant here.

**29.** 11 U.S.C. § 105(a) (1993) provides:
(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent abuse of process.
Collier on Bankruptcy states that in order to obtain a stay under 11 U.S.C. § 105(a), the debtor must show:
... (1) irreparable harm to the estate; (2) likelihood of a successful reorganization; and (3) no harm or minimal harm to the other party ... [b]ecause a request for an injunction pursuant to section 105 is akin to a request for a preliminary injunction, the party seeking injunctive relief must satisfy the requirements of Rule 65 of the Federal Rules of Civil Procedure as applied to bankruptcy by Bankruptcy Rule 7065. While the particular language of the test may vary from circuit to circuit, the test is generally stated as follows: 'The first requirement is that there be the danger of imminent irreparable harm to the estate or the debtor's ability to reorganize. Second, there must be a reasonable likelihood of a successful reorganization. Third, the court must balance the relative harm as between the debtor and the creditor who would be restrained. Fourth, the court must consider the public interest in successful bankruptcy reorganizations with other competing societal interest.'

2 Collier on Bankruptcy ¶ 105.02 (1993) (footnotes omitted).
Here, there were no such findings by the bankruptcy court. It is not clear that persons other than the debtor have standing to seek stays or injunctions pursuant to 11 U.S.C. § 105. *See In the Matter of Venegas Munoz,* 73 B.R. 283, 285 (Bankr., D.P.R.1987). Some courts have declined to apply 11 U.S.C. § 105 to protection of non-debtors. *See In re Codfish Corp.,* 97 B.R. 132 (Bankr., D.P.R. (1988); *In re Juneau's Builders Center, Inc.,* 57 B.R. 254, 256 (Bankr., M.D.La.1986). *See also In re O.H. Lewis Company,* 40 B.R. 531 (Bankr.D.N.H.1984); *In re Venture Properties, Inc.,* 37 B.R. 175, 10 Collier Bankr.Cas.2d 169 (Bankr., D.N.H.1984). Collier says that it is an open question whether section 105 empowers a court to enjoin an action permanently, past confirmation of a plan.

**30.** Most courts considering the issue of 11 U.S.C. § 105(a) protection of third parties begin their analysis with *In re Otero Mills, Inc.,* 25 B.R. 1018 (D.N.M.1982). 2 Collier on Bankruptcy ¶ 105.02 (1993). In *In re Otero* the court held that pursuant to 11 U.S.C. § 105(a) it had the power to enjoin a party from proceeding in state court against a nonbankrupt party where the state proceeding was related to a case arising under title 11. The *Otero* court concluded that to enjoin an action against a third party, the court must find that the failure to enjoin would affect the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through that third party. There is no such evidence or finding here. *In re Otero* did not involve consideration of a prior state court ruling.

soned that 11 U.S.C. § 105(a) would fall within exception to Anti–Injunction Act). While the bankruptcy court's December 10, 1992 order was based on res judicata, its injunctive power purported to stem from 11 U.S.C. § 105(a).[31]

Zickler argues that 11 U.S.C. § 105 does not provide a bankruptcy court with equitable power beyond the scope of the Bankruptcy Code. Zickler contends that in order for a bankruptcy court to have jurisdiction to issue an injunction, the creditor's suit must affect the bankruptcy estate. Zickler claims that his state court action will have no effect upon NAAG's bankruptcy estate.

■ If *Parsons* applies here,[32] this court's previous discussion with respect to the requirements of a res judicata defense arising out of the plan confirmation would apply to the Alabama Supreme Court's decision that Zickler's state court action was not barred by the defense of res judicata.[33] That analysis requires giving res judicata effect to the Alabama Supreme Court's decision.

■ Even if the Alabama Supreme Court decision is not entitled to res judicata effect, another related principle is likely applicable. The court must address whether the guarantors Jeter and Shultz are collaterally estopped from pursuing this action in the bankruptcy court. Since Jeter and Shultz initially chose to defend Zickler's action in the Alabama state courts rather than petition the bankruptcy court for an injunction prior to the final decision of the Alabama Supreme Court, are they collaterally estopped from going back to

the bankruptcy court and challenging the issue raised and decided in the state courts?

In *Manning v. Auburn,* 953 F.2d 1355, 1358 (11th Cir.1992), the Eleventh Circuit generally discussed the relationship between collateral estoppel and res judicata. In *Dixie National Life Insurance Company v. McWhorter,* 887 F.2d 1564, 1566 (11th Cir.1989) the Eleventh Circuit set forth the requirements for collateral estoppel to be applicable:

(1) the issue at stake is identical to the one involved in the prior litigation;

(2) the issue was actually litigated in the prior litigation;

(3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the prior litigation;

(4) the party against whom the earlier decision is asserted has had a full and fair opportunity to litigate the issue in the prior action.

*See also Fountain v. Metropolitan Atlanta Rapid Tr. Auth.,* 849 F.2d 1412, 1414 (11th Cir.1988); *Halpern v. First Georgia Bank,* 810 F.2d 1061, 1064 (11th Cir.1987); *Dairyland Ins. Co. v. Jackson,* 566 So.2d 723, 726 (Ala.1990).

This court concludes that the doctrine of collateral estoppel is applicable for the reasons set forth below. NAAG's, Jeter's and Shultz's September 29, 1992 complaint petitioning for injunctive relief against Zickler's state court action raised the issue of the res judicata effect of the bankruptcy court's order confirming NAAG's plan.[34]

---

**31.** Bankruptcy courts have found 11 U.S.C. § 105 to fall within a separate exception to the Anti–Injunction Act. *Parsons,* arguably, only precludes a federal court, on res judicata grounds, from enjoining a state action under the relitigation exception of the Anti–Injunction Act. This court, however, can see no logical reason for treating one exception any differently than another.

**32.** As stated, this court sees no logical reason why *Parsons* would not be applicable even to a section 105(a) order.

**33.** The issue here is redolent of the "renvoi" doctrine in the conflict of laws area. One

court's decision on an issue of res judicata is entitled to a res judicata bar.

**34.** Jeter and Shultz primarily contend that Zickler should not be able to sue in state court and upset the bankruptcy court's decree. In *Zickler v. Shultz,* the Alabama Supreme Court rejected this position. The court rejected res judicata as a defense, and that conclusion essentially provides Zickler with the authorization to proceed in state circuit court against Jeter and Shultz. Because Jeter and Shultz chose to challenge Zickler's opposition to their res judicata defense in state court rather than first go the bankruptcy court, the Alabama Supreme Court's decision in *Zickler* precluded them from raising the same

The Alabama Supreme Court, on July 10, 1992, in *Zickler v. Shultz, supra,* concluded that the bankruptcy court's order was not entitled to res judicata effect with regard to Jeter and Shultz. The court reasoned that the bankruptcy court did not have subject matter jurisdiction to release Jeter and Shultz as guarantors. Therefore, the court reversed and remanded the case.[35]

The issue raised in Jeter's and Shultz's belated complaint challenging Zickler's state court action was identical to one of the issues raised and litigated before the Alabama Supreme Court in *Zickler.* Since Jeter and Shultz were defendants in the state court action, they had a full and fair opportunity to litigate Zickler's state court action and their res judicata defense. Moreover, the decision rendered by the Alabama Supreme Court in *Zickler, supra,* determined the issue raised here in Jeter's and Shultz's bankruptcy court complaint i.e. whether Zickler's action was barred under the doctrine of res judicata. Since the Alabama Supreme Court determined that the bankruptcy court's order was not entitled to res judicata effect with regard to Jeter and Shultz, its decision was a critical and necessary part of the judgment in that action.[36]

Jeter and Shultz chose to oppose Zickler's action in state court with a res judicata defense rather than first go to the bankruptcy court and petition for an injunction. All the requirements for collateral estoppel have been satisfied.

## SUMMARY

The court concludes that the *Parsons* principles and/or collateral estoppel render the subject order of the bankruptcy court

issue in the bankruptcy court. This court has little doubt that the Alabama Supreme Court would give preclusive effect to its decision.

**35.** Other issues were addressed by the Alabama Supreme Court, but this issue was specifically addressed and decided. In *United States v. Dean,* 752 F.2d 535, 541 n. 14 (11th Cir.1985), the court stated that "... a prior decision not 'on the merits' will have res judicata effect as to issues that were actually decided." In *Acree v. Air Line Pilots Asso.,* 390 F.2d 199, 203 (5th Cir.1968), the court held that a prior decision on jurisdictional grounds precludes further litigation on the jurisdictional issue.

**36.** In Alabama, to constitute a judgment, there must be a final judgment rendered on the merits. *Food Service Distributors, Inc. v. Barber,* 429 So.2d 1025, 1027 (Ala.1983). Appealability should be equated with finality for purposes of res judicata and collateral estoppel. *Sterling Oil of Oklahoma, Inc. v. Pack,* 291 Ala. 727, 287 So.2d 847, 861 (1973). *See Parsons,* 825 F.2d at 1480. In *Mills v. Alabama,* 384 U.S. 214, 217, 86 S.Ct. 1434, 1436, 16 L.Ed.2d 484 (1966), the Court addressed whether the Alabama Supreme Court's opinion that remanded the case to the trial court was appealable under 28 U.S.C. § 1257. The *Mills* Court concluded that "... the judgment of the State Supreme Court did not literally end the case. It did, however, render a judgment binding upon the trial court ... [t]hus if the case goes back to the trial court ... [the trial court would convict] and then another appeal ... [s]uch a roundabout process would ... be an inexcusable delay." *See also North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc.,* 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973). In *Signal Oil & Gas Co. v. The Barge W–701,* 654 F.2d 1164, 1168 (5th Cir., Unit A 1981), the court stated:

[a]s a preliminary matter, we note that McDermott's attempt in this damages portion of the proceeding to attribute fault to Williams beyond the negligence of the barge superintendent, found the cause of the accident in the liability hearing, may run afoul of the 'law of the case' doctrine. This doctrine, 'a restriction self-imposed by the courts on themselves in the interests of judicial efficiency, generally operates to preclude a reexamination of issues decided on appeal, either by the district court on remand or by the appellate court itself upon a subsequent appeal.' *Conway v. Chemical Leaman Tank Lines, Inc.,* 644 F.2d 1059, 1061 (5th Cir.1981). Unlike res judicata, law of the case does not operate to bar subsequent consideration of matters that could have been, but were not, raised and resolved in the earlier proceeding. Like the doctrine of collateral estoppel, it prohibits relitigation only of matters decided, expressly or by necessary implication, in the prior appellate proceeding. *Id.* at 1062.

*Parsons* refers to the merits of "the res judicata issue." *Parsons,* 474 U.S. at 524, 106 S.Ct. at 772. Other cases which suggest that a highest state court ruling on a particular issue is "final" are: *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); *Construction & General Laborers' Union v. Curry,* 371 U.S. 542, 83 S.Ct. 531, 9 L.Ed.2d 514 (1963); *Pope v. Atlantic C.L.R. Co.,* 345 U.S. 379, 73 S.Ct. 749, 97 L.Ed. 1094 (1953); *Richfield Oil Corp. v. State Board of Equalization,* 329 U.S. 69, 67 S.Ct. 156, 91 L.Ed. 80 (1946).

enjoining Zickler's pursuance of the state court action contrary to law. The court ultimately concludes that either under *Parsons* or the doctrine of collateral estoppel, Jeter and Shultz were barred from seeking injunctive relief from the bankruptcy court. The bankruptcy court's order will be **REVERSED** and **VACATED**.